## THOMAS *et al. v.* BYRD *et al.*

[73 South. 725, Division A.]

WILLS. *Character of instrument. Testament or deed.*

    An instrument executed by three brothers who were engaged in the operation of a plantation owned by two of them, which provided that on the death of any one of them, his interest, in the property was to vest in the others, subject only to his personal debts, and that in the event of the death of two of them, the property should vest in the survivor, the expressed purpose being that the business might be carried on without interruption, did not convey to any of the parties thereto any interest in the property of the others, to vest, either immediately or in the future, but the object sought to be accomplished by it was to cause whatever property each of the parties thereto might own at his death, to vest when that event should occur, in the surviving party or parties. The instrument therefore is testamentary in character, and can have no operation as a deed.

Appeal from the Chancery court of Sunflower county. Hon. E. N. THOMAS, Chancellor.

Suit to quiet title by James W. Byrd and another against Mabel C. Thomas and others. From a decree for complainants, defendants appeal.

James W. Byrd, August B. Byrd, and William G. Byrd, three brothers, all of whom were unmarried at the time of the execution of the instrument which forms the basis of this suit, were engaged in the planting business. James W. Byrd and Augustus B. Byrd were the owners as tenants in common of the land and personal property involved in this suit. Prior to the execution of this contract William G. Byrd had advanced some money to the other two brothers which was used in the improvement and operation of the plantation. All of them seem to have taken whatever money was necessary for their personal expenses out of the business without keeping any account among themselves. After the execution of the instrument referred to Augustus B. Byrd married and subsequently died,

leaving as his heirs at law his widow, Mabel C. Byrd, and an infant child, James W. Byrd, Jr. At the time of his death Augustus B. Byrd owned an undivided half interest in the property involved in this suit, and his widow and child claim it as his sole surviving heirs. The two survving brothers, James W. Byrd and William G. Byrd, claim exclusive title to this property under the instrument hereinafter set out, and they brought this suit to quiet and confirm their title to same and cancel the claim of the widow and son of their deceased brother, Augustus B. Byrd.

The defense interposed by the widow and son was that the instrument was testamentary in character and ineffectual to pass title to the property of Augustus B. Byrd, deceased, either as a deed or a contract, and that inasmuch as it was not executed and attested as required by section 5078 of the Code of 1906, which provides that a will "if not wholly written and subscribed by the testator shall be attested by two or more credible witnesses in the presence of the testator," that therefore the property of Augustus B. Byrd passed to his widow and son by descent. On final hearing the court construed the instrument as a deed or contract, and not as testamentary, and rendered a decree confirming the title of complainants and canceling the claim of the widow and son thereto. From this decree the widow (who had subsequently married a man named Thomas) and her infant son prosecuted this appeal.

The instrument (Exhibit A) referred to in the opinion is as follows:

J. W. Byrd et al. to W. G. Byrd.

This contract and agreement, made and entered into this the 21st day of March, A. D. 1907, by and between James W. Byrd, Augustus B. Byrd, and William G. Byrd, all of whom reside at or near Isola, in the county of Washington, state of Mississippi, witnesseth:

That whereas, all of the parties to this contract are interested in certain farming and stock-raising business now being conducted on lands owned by the undersigned James W. Byrd and Augustus B. Byrd: and whereas, we each are desirous that said business shall be continued and conducted as it is now being conducted, in the event that any of us should die without such business being interfered with, or in any manner suspended or litigated in the event of the death of any of the parties:

Now, therefore, this agreement and contract witnesseth that in the event that the said Augustus B. Byrd and William G. Byrd should survive the said James W. Byrd, then the entire right, title and interest of the said James W. Byrd in all lands and other property now owned by the said James W. Byrd shall become the property of the said Augustus and William G. Byrd, who shall hold the same by fee-simple title, subject only to the personal debts of the said James W. Byrd, and should the said James W. Byrd and William G. Byrd survive the said Augustus B. Byrd, then all the right, title, and interest of the said Augustus in all lands and personal property, wheresoever situated, shall become the property of the said James W. Byrd and William G. Byrd who shall hold the same in fee simple, subject only to the individual debts of the said Augustus B. Byrd. Should the said Augustus B. Byrd and James W. Byrd survive the said William G. Byrd, then all the property, real or personal and mixed, wheresoever situated, owned by the said William G. Byrd, at the time of his death, shall become the property of the said James W. Byrd and Augustus B. Byrd, who shall hold the same in fee simple, subject only to the personal debts of the said William G. Byrd; and in the event of the death of any two of the parties to this contract, no matter when or how occurring, then the survivor shall become seised and possessed in fee simple of all the

right, title, and interest of all the property, real or personal and mixed, which may have been owned by either jointly or severally, or by either or both of such deceased parties, subject, however, to the individual debts of such deceased party or parties; it being our intention by this contract and agreement that all of the property now held or owned either jointly or severally by the several parties to this contract shall become the property of the surviving parties, or party, whenever either or any of the parties hereto shall die, and that the business now being conducted by us shall be continued without change of the same, or without liquidation or suspension, in that same manner as if one of the said parties had died, and just as if they were all living as at this time.

Witness our signatures this the 21st day of March, 1907.                                    James W. Byrd.
                                            Augustus B. Byrd.
                                            William G. Byrd.
State of Mississiuppi, County of Washington, town of Isola.

This day personally appeared before the undersigned, notary public in and for the Fifth supervisor district, county of Washington and state of Mississippi, James W. Byrd, Augustus B. Byrd, and William G. Byrd, who each acknowledged that they signed and delivered the foregoing instrument of writing on the day and year therein mentioned and for the purposes therein expressed, as their own joint and several act and deed.

Given under my hand and seal of office this the 21st day of March, A. D. 1907.
        [Seal.]                      O. T. Eddleman, N. P.
State of Mississippi, Sunflower County.

I certify that the foregoing instrument was filed for record in my office at 9 o'clock a. m. on the 22d day of March, 1907, and was duly recorded on the 22d day

of March, 1907. W. P. Gresham, Clerk, F. B. McKee, D. C. [Seal.]

Book F—3, page 266.

Filed this the 16th day of February, 1912. A. P. Stubblefield, Chancery Clerk, by L. M. Watts, Deputy Clerk.

*Campbell & Cashin* and *S. D. Neil,* for appellants.

If the instrument of writing presented by this record had been signed by only one of the parties, instead of by all three of them, and it spoke the same language that this jointly executed instrument speaks, it would doubtless have been construed by the court below as testamentary in its nature, and ineffectual for want of proper execution and probate; for every word in it, after reciting the preamble, as applied to each of the signers thereof, relates to the future and unequivocally shows that its provisions are not to be operative, except in the event of the death of each of said parties.

The fact that the instrument is in the form of a contract, and was signed by more than one party, does not prevent it from operating as testamentary in its nature; for, it is well established, especially by the more modern authorities, that an instrument in writing executed by several parties, may operate, and will operate, according to its terms, as a joint will, or a mutual and reciprocal will, or as the several will of the parties.

40 Cyc. page 2110, et seq; Crawley's Appeal, 10 L. R. A. 91; Note to *Ferris* v. *Neville,* 89 Am. St. Rep. 493; Note to *Robertson* v. *Robertson,* 136 Am. St. Rep. 592. In determining whether an instrument be a deed or a will, the main question is: Does the instrument, regardless of its form, and regardless of the number who sign it, pass a present interest? If it does, it is a deed; otherwise, it is not. *Jones* v. *Jones,* 16 Am. Dec. 35, and notes; *Babb* v. *Harrison,* 70 Am. Dec.

203; *Burlington University* v. *Barrett,* 92 Am. Dec. 383, and notes; *Wilson* v. *Carrico,* 49 Am. St. Rep. 213, and notes; 12 Cyc., page 521; 40 Cyc., page 1084; *Wall* v. *Wall,* 30 Miss. 91; *Exum,* et al. v. *Canty,* et al., 34 Miss. 533; *Sartor* v. *Sartor,* 39 Miss. 760; *McDaniel* v. *Johns,* 45 Miss. 632; *Cunningham* v. *Davis,* 62 Miss. 366; Devlin on Deeds (3 Ed.), sec. 854; and many other authorities that could be cited.

In *Wall* v. *Wall, ubi supra,* it is said: "The determination of the legal character of instruments of this kind depends mainly upon the question whether the maker intended to convey any estate or interest to vest before his death, and upon the execution of the paper, or, on the other hand, whether all interest and estate whatever, were to take effect only after his death. For the most part, that is governed by the provisions of the instrument, which may be sometimes aided by the concurrent circumstances of its execution; and the rule is well established that whatever may be the form of the instrument or the circumstances of its execution and delivery, if, upon the whole, the intention was that it should have only a future operation after death, it must be held to be a will. And in such case, it is immaterial whether the maker call it a deed or a will; for it must, nevertheless, have that effect which the law gives to it."

The test by which to determine whether a given instrument is a deed or a will, as announced in the foregoing authorities, has been announced and re-announced and applied in this state in every case reported since the case of *Wall* v. *Wall, ubi supra.*

So according to the concensus of judicial opinion, and of text writers, it matters not what the form of the instrument may be, whether in the form of a deed or contract or what the maker may call it, if, by its provisions, a present interest does not pass to the grantee or donee, it is to be construed as testamentary in its nature.

Much reliance is placed by adverse counsel · upon
the provisions of section 2762 of the Code of 1906,
which are as follows: "Any interest in, or claim to,
land may be conveyed to vest immediately, or in the
future, by writing signed and delivered; and such
writing shall have the effect to transfer, according to
its terms, the title of the person signing and delivering
it, with all its instruments, as fully and perfectly
as if it were transferred by feoffment with livery
of seizin, notwithstanding there may be adverse pos-
session thereof."

But the purpose of that statute was not to abolish
the test by which to determine whether or not a given
instrument be a deed or a will. Its main purpose was
to dispense with the necessity of livery of seizin,
in passing a freehold estate in land to vest or com-
mence in the future, and to provide the means for
transferring any interest in land *intervivos.*

The same Code elsewhere, also provides a means of
disposing of one's lands and other property by last
will and testament. A deed takes effect upon its
delivery; but a last will and testament takes effect
upon the death of the testator. The one is irrevocable;
the other ambulatory and revocable. So, it is allow-
able, in this state, for a party to dispose of his lands
by either of these modes. Whether or not a disposi-
tion of lands or other property was by deed or by
will is a matter left for judicial construction; and its
nature is determined by applying the test whether or
not any interest whatever vests at the time of its
execution, to be then enjoyed, or to be enjoyed in the
future; if so, it is a deed, otherwise it is testamentary
in its nature.

The substance of the statute quoted has been in every
Code, as far back as the Code of 1857, including that
Code; and, notwithstanding the fact that, by that Code
and all subsequent Codes, any interest in land could
be conveyed to commence in the future, the above

mentioned test for determining whether an instrumnt be a deed or a will has been applied by the courts. *Cunningham* v. *Davis,* 62 Miss. 366; *Leaver* v. *Gauss,* 62 Iowa, 314.

After the passage of the Statute of Uses, any interest in lands could be conveyed by deed of Bargain and Sale, or, by covenant to stand Seized to Uses, to commence in the future, even at the death of the grantor or convenator. *Bell* v. *Scammon,* 41 Am. Dec. 706; *Chancellor, et al.,* v. *Windham, et al.,* 42 Am. Dec. 411; *Wall* v. *Wall,* 30 Miss. 91; *Exum, et al.* v. *Canty, et al.,* 34 Miss. 533; *McDaniel* v. *Johns,* 45 Miss. 632.

Notwithstanding that fact, the courts uniformly have announced and applied the test hereinbefore mentioned for determining whether a given instrument should be construed as a deed or testamentary in its nature.

The authorities cited show that the nature of the instrument is to be determined, from its provisions, and that it matters not what the maker calls it or what its form may be, or whether or not it be acknowledged and recorded as a deed; it will have that effect which the law gives to it. How then, are the courts to determine what effect the law gives to the instrument, unless it be by applying the test hereinbefore mentioned.

*Moody & Williams,* for appellees.

Before discussing the objections urged against the validity of the contract in question made by the attorneys for the appellants, in a very able brief by them, it may not be unprofitable to discuss, as briefly as possible, the nature of this contract from the appellees' standpoint.

By reference to the contract itself, it will be noted that the agreement of each of the parties thereto with the others is set out in different paragraphs. The terms of all of which are substantially the same. In

the first of these paragraphs it is stated: "That in the event the said Augustus B. Byrd and William G. Byrd should survive the said James W. Byrd, then the entire right, title and interest of the said James W. Byrd in all lands, and other property, now owned by the said James W. Byrd shall become the property of the said Augustus B. Byrd and William G. Byrd, who shall hold the same by fee simple title, subject only to the personal debts of the said James W. Byrd."

There are similar paragraphs by which Augustus B. Byrd and William G. Byrd, each, bound their property. The agreement by each of the parties furnished the consideration for a like agreement of the others. That there might not be any doubt as to its being the intention of the parties that the property owned by each should be thus bound, the contract further provides: "It being our intention, by this contract and agreement, that all of the property now held or owned, either jointly or severally, by the several parties to this contract, shall become the property of the surviving party or parties, whenever any or either of the parties thereto shall die," etc.

The contract itself makes it clear that each of the parties thereto intended that the others should be vested with this present interest in the property then owned by him and that this intention might be carried out the contract was executed by all, and duly recorded.

A will could not carry out the wishes of the parties. A will would not vest such a present interest in the property, as a will could only take effect at death, and until death, would, legally, be nothing more than so much waste paper. These parties wanted their property to be thus bound from the date the contract was executed. So it contains no provision whatever for a revocation of the contract. The present interest in the property of the others thus vested in each, by

the express terms of the contract, was not the fee simple title thereto, as the fee was not to be possessed, enjoyed, or even vest, until death, but the present interest that did vest, upon the execution of the contract, and by its express terms, was the right or assurance, not subject to revocation, that the fee would vest and be enjoyed by the survivors on the death of any of the parties thereto. This present right, that is to say, the absolute right to own the property in fee at death, by the express terms of the contract, vested when it was executed and delivered.

The estate or interest, that thus vested when the contract was executed, is designated at common law as an estate "upon conditions precedent." This was the estate, or interest, in the property that vested upon the execution of the contract, and such an estate is defined as follows:

"Estates upon conditions are of two sorts: those upon condition implied, and those upon condition expressed. An estate upon condition implied, is by law, and an estate upon condition expressed is one in which the condition is expressed in the instrument creating it."

"Estates upon conditions expressed are those upon conditions precedent, and those upon conditions subsequent. An estate upon condition precedent is such as when the condition must happen, or be performed before the estate can vest or be enlarged; thus, if an estate for life be limited to A upon his marriage with B, the estate is an estate upon condition precedent, and until that happens no estate is vested in A." 2 Blackstone, Commentaries, page 150, *et seq;* 4 Kent, Commentaries, page 133-137; 16 Cyc., page 606, and cases cited.

Thus, by the express terms of the contract, the estate in the property of the others that immediately vested in each by the express terms of the contract, was an estate upon condition precedent:

The condition upon which the fee simple title was to
vest in the survivors was expressly designated, in the
instrument to be the death of the signatory party
whose property is claimed. The condition thus ex-
pressed had to happen before the fee simple title
could vest. But the estate that immediately vested,
upon the execution of the contract, was not the fee
simple estate but the estate upon conditions precedent.
Upon the happening of the event named, the fee vested,
and did not vest until that event did happen. But,
as stated the estate which did vest upon the execution
of the contract was an estate upon conditions pre-
cedent. That is to say, the absolute right to be pos-
sessed of the fee at death.

Had the contract conveyed the right to the im-
mediate possession of the property to a designated
person, with remainder in fee to the survivors; or
if the instrument, had been so worded as to express
a covenant to stand seized for life with the remainder
in fee to the survivors, which it impliedly does, it would
be much easier to comprehend the nature of the es-
tate that immediately vested in the survivors, upon
the execution of the contract, and in that instance
there could not even be any room for argument as
to whether a present interest was, by the terms of the
contract, vested in the survivors. In that case there
would be a particular precedent estate upon which
the remainder could rest.

We are not now concerned with the validity of the
conveyance of an estate upon conditions precedent,
without a precedent particular estate to support it,
but only in determining the character of the estate that
vested upon the execution of the contract. Yet the
question arises, can an estate, upon condition precedent,
without a precedent particular estate to support it,
be created under the laws of this state? In other
words, can an interest in, or claim to, land be con-

veyed, to vest in the future, without a particular precedent estate to support?

At common law, such an estate cannot be thus conveyed. At common law an interest in or claim to, land to vest in the future, must have a particular precedent estate to support it or have included in it a covenant on the part of the grantor to stand seized for life with the remainder in fee to the grantee. At common law, this is rendered necessary because no freehold estate can be conveyed without livery of seizin. We contend that the requirement of livery of seizin never obtained in this state, and if it did obtain, it has been abolished by statute.

In this state all lands are allodial, and the feudal tenure of real property never did obtain in this state. In this state lands are not, and never have been, holden of any lord or superior, but, on the contrary, have always been free. Livery of seizin was rendered necessary at common law, because of the feudal tenure of real property, but, as stated, it never did obtain in this state, and there is no reason why it should, where lands are allodial, not holden under a lord or superior.

In *Cassedy* v. *Jackson*, 45 Miss. 397-407, it is, among other things, said: ''In this state the form of conveyance is very simple. It is usually by bargain and sale, which by operation of our statute, transfers the possession of the bargainor to the bargainee, without the necessity of livery of seizin or reference to the statute of uses.

The supreme court of Minnesota, in the discussion of this question, made use of the following language in *Sabledowsky* v. *Arbuckle*, 52 N. W. Rep. 920: ''The reason why at common law a precedent estate was necessary to support a freehold estate, to commence *in futuro*, rested entirely upon the subtleties and technicalities of the feudal tenure of real property, which have no application in this state where all lands are allodial, and not held of any superior. Consequently,

we are strongly inclined to the opinion that even in the absence of any statute on the subject, it ought to be held that the common law rule is not applicable, but that a conveyance of a freehold estate in land to commence at a future time is valid, although no precedent particular estate is created by the conveyance. There is no good reason, in the nature of things, why this ought not to be so, but our statutes recognize, and impliedly authorize such conveyances."

What is true in Minnesota is true in this state and there is no earthly reason why a technicality, based solely on the feudal tenure of real property, which has never obtained in this state, should be used to defeat the deliberate intent and act of the parties. If however, this question had not been decided favorably to the contention made by us, both by the courts of this country in general, and of this state in particular, the question, at least insofar as this state is concerned, is put at rest by statute.

By section 2762 of the Mississippi Code of 1906, it is provided that: "Any interest in, or claim to, land may be conveyed, to vest immediately, or in the future, by writing, signed and delivered; and such writing shall have effect to transfer, according to its terms, the title of the person signing and delivering it, with all of its instruments, as fully and perfectly as if it were transferred by feoffment with livery of seizin, notwithstanding there may be an adverse possession thereof."

In which latter event, for the want of possession, there could not, of course, be livery of seizin. *Rogers* v. *Rogers*, 43 So. 434; *Robertson* v. *Robertson*, 94 Miss. 645.

We ask you to read this case, and especially the contract, which is identical with the contract in the case at bar.

While it is true the court further said that if the instrument should be construed to be a mutual, or even

a joint will, it cannot be revoked, and the suit must fail for that reason, yet it cannot, by any means, be said that the opinion of the court, in construing the instrument to be a valid contract is *obiter dictum.* See also, *Alexander* v. *Richardson,* 64 So. 217.

In view of what has been said, and especially in view of our statute and the decisions of this court, may we not confidently assume, not only that the contract in question is not a will, but also that it validly conveys all interest in, or claim to, land the fee simple title to vest in the future, namely, on the death of Augustus B. Byrd.

SMITH, C. J., delivered the opinion of the court.

While the solution of the question presented by this record is not without difficulty, we are of the opinion that the instrument here involved (which the reporter will set out in full) did not convey to any of the parties thereto any interest in the property of the others, to vest either immediately or in the future, but that the object sought to be accomplished by it was to cause whatever property each of the parties thereto might own at his death to vest, when that event should occur, in the surviving party or parties. The instrument, therefore, is testamentary in character, and can have no operation as a deed.

*Reversed and remanded.*