[No. 26482.   *En Banc.*   August 16, 1937.]

*In the Matter of the Estate of* JAMES B. MURPHY,
*Deceased.*

YOUNG MEN'S CHRISTIAN ASSOCIATION, *Respondent*, v.
ESTHER MURPHY *et al., Appellants.*[1]

[1]Reported in 71 P. (2d) 6.

*Poe, Falknor, Falknor & Emory* and *Van A. Neher,* for appellants.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

HOLCOMB, J.—By the terms of his will, which was executed January 6, 1933, James B. Murphy, who died September 18, 1934, bequeathed to the Young Men's Christian Association, of Seattle, his private library and five thousand dollars for educational work. After making other devises and bequests, the testator bequeathed the residue of his estate to seven nieces and nephews.

On April 30, 1930, more than four years prior to the date of the death of the testator and approximately thirty-two months prior to the execution of his last will and testament, Murphy entered into a contract, designated "lease," with the Young Men's Christian Association, under the terms of which he leased to the latter a tract of land near Bellevue. That tract was not specifically devised in the will, and if the land constitutes a part of the estate of decedent, it will pass under the residuary clause.

Murphy had been especially interested in the work of the Young Men's Christian Association for about thirty years before his death and remained a member of the board of directors, vice-president of the association, and was connected with the boys' work de-

partment, up to the time of his death. Apparently, it was by reason of decedent's interest in the boys' work of the association over such a period of years, and because of his desire to promote and foster the same, that he entered into this agreement, denominated a lease. The association was put into immediate and exclusive possession of the leased premises upon the execution of this instrument. That consideration was exchanged for the lease, is clear. The association went upon the land, made improvements, spent money, constructed buildings, installed equipment, and paid taxes.

The term of the lease is "for the period of his [Murphy's] natural life and until his death, or until a guardian or trustee for any cause is appointed of his estate."

Under the rental provision of the lease, the lessee was required and agreed to pay, during the term of the lease, all power, light, heat, water, oil, and other service charges, and all taxes and assessments levied against the leased premises or against any improvements then or subsequently placed upon the leased premises.

The lessee agreed to keep the premises in a good, safe, and secure condition, to conform to all sanitary and health regulations of the state, to indemnify the lessor against accidents occurring on the premises or adjacent roadways, to keep the premises safe for use as a camp ground for boys, to make all necessary repairs, and to reconstruct and rebuild such structures as might become damaged or destroyed or obsolete.

It was stipulated between the parties that all improvements placed upon the premises "shall at once become a part of the freehold."

Paragraph 6 of the lease imposes upon the lessee

the duty of the care and preservation of the trees and shrubs upon the premises.

The lessee was obligated by paragraph 8 to construct, prior to June 15, 1930, an adequate sewage system, an adequate water distributing system, and at least seven summer sleeping cabins for boys.

Paragraph 9 requires the erection and completion, before June 1, 1931, of a lodge building at a location to be agreed upon between the lessor and lessee, at a cost of not less than five thousand dollars. There are further provisions in this paragraph for the preparation of a baseball ground, a tennis court, and a volley ball court, on or before a designated date.

While, under the terms of paragraph 14, the lessor was not required to place upon the grounds any equipment, structures or appliances of any nature, he was privileged to do so,

". . . if he chooses with consent of the lessee and the same shall be deemed in the nature of a loan of such equipment, etc., is not properly cared for, the same may be removed at any time by him without notice, and this provision shall apply to personal property of every kind and nature which he may place thereon with consent of the lessee, but while such personal property is upon the grounds, the said lessee agrees to use the same solely for the purpose for which it was intended by lessor and shall be responsible for the care and preservation of same."

Paragraphs 16 and 17 of the lease read:

"It is further covenanted and agreed that if the lessee shall become either insolvent or a bankrupt, or if a permanent receiver is appointed over lessee, or the said lessee fails to function as a going concern, this lease immediately terminates and ends without any notice of election or act or rescission on the part of the lessor; and it is further covenanted and agreed that if any portion of the said premises is taken for roadways, it shall not affect the validity or continuance of this lease and in such event the award for the

land taken and damage to the remainder will go to and become the property of the lessor and the award for the injury or destruction of any building will go to the lessee herein; and that if the whole of said premises or so much thereof as shall render the remainder unfit for camp purposes, is taken by eminent domain, the awards for the land taken shall go to. the lessor and the awards for injuries or taking of the buildings and improvements shall go to and become the property of lessee, and lessee will be permitted to salvage any buildings or structures upon any remaining portion of said premises not taken, and this lease shall thereupon terminate and end."

"Lessee further covenants and agrees that it will not without the written consent of the lessor sublet the whole or any part of said premises, nor assign this lease, nor any interest therein, *nor permit the title of the lessee to be transferred from the lessee* involuntarily or by operation of law and will not, without such written consent, encumber the said lease-hold interest, or any part thereof, and that if consent is once given by the lessor to assign or encumber this lease-hold estate, as in this paragraph provided, the lessor shall not thereby be barred from afterwards refusing to consent to any further or other assignment or encumbrance. The lessor covenants and agrees that he will not encumber his interest in the fee of said premises and will not sell or encumber his ownership of this lease; and further covenants and agrees that if he shall sell or encumber his interest in the said premises or the said lease-hold, or in any property attached thereto or connected therewith, or if he becomes insolvent or bankrupt, or if a conveyance or encumbrance of the interest of the lessor in said premises or any property attached thereto or connected therewith, is made by operation of law, or if any conveyance, transfer or encumbrance thereof arises by virtue of the ownership of the said lessor either involuntarily or voluntarily, then in the event of anyone of the foregoing contingencies relating to the Bankruptcy encumbrance, or transfer of lessor's title, the title to said leased premises shall

forthwith vest in and become absolute in the lessee, free of any and all claims, attempted transfers·or encumbrances of the said lessor, his representatives or assigns, and a suit in equity may be immediately instituted by the said lessee to quiet its title to said lands and premises for, or on account of, the breach of this covenant by lessor." (Italics ours.)

Paragraph 18 provides that any waiver of any of the terms or provisions of the lease must be in writing and can be proved only by a written instrument and not by parol evidence; that any waiver of any one breach of the lease by the lessee shall not be deemed or construed as a waiver of any subsequent breach of the same or any other provision of the lease; that any failure on the part of the lessor to exercise any right under the lease, or to promptly declare a forfeiture, or to promptly take advantage of any breach of the terms of the lease, shall not be construed as a waiver of any such right or such terms or conditions, nor of any breach thereof; that delay on the part of the lessor in promptly claiming any breach of the lease is not to be construed as an extension of time for the performance of any of the conditions or covenants to be performed by the lessee; that indulgences granted by the lessor or forbearance in enforcing any of the provisions of the lease shall not estop the lessor from later claiming such right,

" . . . nor shall it be used in construing the lease more favorably to the lessee, and it is covenanted and agreed that the lessor, although he has not exercised his right under this lease for a period of time, may at any time thereafter strictly and rigidly enforce the same, to all intents and purposes as if no leniency had been shown by him."

By paragraph 19, the lessor and his agents were given the right at any time to enter upon the leased property for the purpose of ascertaining whether the

lessee was performing its part of the agreement. It is further stipulated that the lessee will not contract any debt for labor or material which may become a lien against the interest of the lessor in the premises, and that the lessee will and can not contract or create any mortgage lien against the interest of the lessor in the leased property, or against the lessor's interest in the improvements placed upon the leased premises.

Paragraphs 23 and 24 read:

"Time is the essence of this lease in reference to all matters to be done and performed by the said lessee and especially in reference to the preservation of the trees, and the said grounds, and this lease shall be strictly construed against the lessee and if the lessee shall fail to fully keep and perform any of the covenants or provisions herein contained, and to be performed by it, then the lessor may, with or without process of law, re-enter the said premises, take possession thereof and remove all persons representing the lessee therefrom and remove personal property belonging to the lessee and store the same in some public warehouse at the expense of the lessee and this lease shall be fully terminated and ended, and the said lessee can never thereafter assert any right or privilege hereunder, lessee waives all notice of default required by statute, or otherwise."

"It is further covenanted and agreed that if the said lessee shall fully perform the terms of this lease and the said lease is in good standing at the time of the death, or the appointment of a guardian or trustee, of the lessor's estate, then in that event the said lands and premises shall become the property of the said lessee and if the said lessee is in possession at the time of the death of the said lessor or at the time of the appointment of a guardian or a trustee, it shall be conclusive proof against the lessor, his representatives and his estate that the lease is in good standing. It is understood on behalf of the lessor that the services to be rendered and the work to be performed, and the expenditures to be made by the said lessee in the fulfillment of the provisions in this lease, is a sufficient

consideration for the passing of the title of the said lands and premises to the lessee upon the death of the lessor, or sooner upon the appointment of a guardian or a trustee, and said transfer and passing shall not be regarded as a gift or devise, but for a good and sufficient consideration, and the executors or administrators or personal representatives of said lessor are hereby authorized, directed and empowered upon his death, or sooner upon the appointment by his deed or otherwise of a guardian or a trustee to manage his estate, to execute any and all conveyances which may be necessary and proper to vest in the said lessee."

The association went into possession of the property in question at the time of the execution of the lease and has been continuously in possession at all times since that date. It is noteworthy that Murphy did not reserve a life estate.

The association filed a petition in the probate proceeding, in which petition it prayed for a decree directing the executor to execute and deliver to it a deed to the premises in question. The demurrers of the executor and several of the residuary legatees to that petition were overruled. Thereafter, answers were filed in behalf of the residuary legatees and in behalf of the executor. As an affirmative defense, the residuary legatees pleaded numerous violations of the terms of the lease. Before the introduction of any evidence, the affirmative defense was stricken by the trial court, on the motion of the petitioner. Trial to the court resulted in a decree requiring the executor to make the conveyance of the property to the petitioner. Three of the residuary legatees have appealed from that decree.

Appellants set forth two assignments of error: First, the court erred in striking the affirmative defense contained in the answer of residuary legatees; second, the court erred in entering its decree directing the conveyance of the premises to respondent by

the executor, and particularly erred in holding that paragraph 24 of the lease was not testamentary in character.

Counsel for appellants urge that, since paragraph 24 of the contract between the decedent and respondent is testamentary in character, and as the contract was not executed with the formality required for a valid will, the provisions thereof are not enforcible.

■ With respect to the affirmative defense asserted, we are not unmindful of the covenants and provisions in the lease to be performed by the lessee or of paragraph 23 of the lease. Respondent admits that, by reason of economic conditions, it was unable to comply strictly, if at all, with some of the covenants mentioned in the lease. Murphy was fully apprised of this fact during his lifetime and could have elected to terminate the lease, but the fact is that he did not do so. Forfeiture clauses must always be strictly construed against the grantor, and nothing will be held to cause a forfeiture unless it plainly appears to be such. To justify a forfeiture for the violation of the condition, the violation must be wilful and substantial. *Eastern Outfitting Co. v. Manheim,* 59 Wash. 428, 110 Pac. 23.

Any argument as to whether respondent did everything required of it and whether its performance was satisfactory under the terms of the lease during Murphy's lifetime is foreclosed by reason of the fact that paragraph 24 of the so-called lease expressly provides that possession at the time of the death of the lessor shall be conclusive proof against the lessor, his representatives, and his estate that the lease is in good standing.

■ At the outset, it is necessary to determine what the nature of this instrument, designated "a lease," is. Whether an instrument is testamentary in

character, depends upon the intention of the maker. *Rennie v. Washington Trust Co.*, 140 Wash. 472, 249 Pac. 992; 2 Tiffany Real Property (2d ed.), § 467, 1809-10.

"In the extreme types, there is little chance of confusion between wills and contracts. A will is dispositive; a contract promissory. A will is gratuitous; while a contract, if not under seal, requires consideration. If the instrument provides for performance at the death of the promisor, there is greater chance for confusion; and, if the consideration is insufficient, the distinction becomes of the highest importance. If the instrument creates a right in the promisee before the death of the testator, the instrument is a contract, or, at least, a defective attempt to make a contract rather than a will." 1 Page on Wills (2d ed.), § 70, p. 120.

"In determining whether an instrument is a contract or a will, the dominant purpose of the maker as manifested therein must control. So the question whether any given writing is a will or a contract must be determined by the character of its contents, rather than by its title or any formal words with which it may begin or conclude; but words which do not change the legal effect of the instrument may nevertheless be significant in determining its character and the intention with which it was made." 68 C. J. 619, § 238.

"Whether or not an instrument is testamentary in character depends upon the intention of the maker. It is the animus testandi that makes an instrument a will. When the animus testandi is established, the character of the instrument is fixed and it is a will if the other requirements as to form and execution have been complied with. In the absence of a testamentary intent, there can be no will." 28 R. C. L. 59, § 3.

There is no doubt that it was the intention of Murphy to convey the land described in the instrument to the association upon compliance with the consideration therein stated. Murphy's intention, as expressed and reflected in the entire instrument, was to

withhold the vesting of the fee title in the association until after his death. Paragraph 24 expressly provides that this transfer shall not be regarded as a gift or devise.

" . . . said transfer and passing shall not be regarded as a gift or devise, but for a good and sufficient consideration, and the executors or administrators or personal representatives of said lessor are hereby authorized, directed and empowered upon his death, or sooner upon the appointment by his deed or otherwise of a guardian or a trustee to manage his estate, to execute any and all conveyances which may be necessary and proper to vest in the said lessee."

While conceding that the court should make every effort to give effect to decedent's intention, the question presented is whether or not the court is precluded from giving effect to that intent.

"The fact that an instrument of doubtful character is invalid if regarded as a conveyance while valid if regarded as a will, has been referred to as a ground for regarding it as a will, and conversely, the fact that an instrument is invalid if regarded as a will while valid if regarded as a conveyance has been considered a ground for regarding it as a conveyance. This view is based partly upon the policy of the courts to give to an instrument a legal operation wherever possible, and partly upon the consideration that the maker of the instrument must have intended it to operate in the mode in which he rendered it capable of operating." 2 Tiffany Real Property (2d ed.), 1813-14, § 467; Rood on Wills (2d ed.), 59, § 75.

The essential distinction between a contractual obligation and a testamentary disposition is that the contract contemplates performance, in part at least, during the lifetime and vests some quantum of present interest in the other party.

"So, although an agreement involves or effectuates a disposition of property belonging to a party thereto, it is valid as a contract, and is not a will, *where it con-*

*templates performance, in part at least, during his lifetime, or vests a present interest in the other party."* 68 C. J. 618, § 238. (Italics ours.)

The general tenor of paragraph 17 shows the instrument contemplates more than a lease. By the terms and conditions in the instrument, the lessor expressly restricted and limited his own title, and by reason of these limitations created in the association a correspondent accretion of title coincident with the execution of the lease, thus vesting the right to require a conveyance of the fee title after Murphy's death. Viewing the provisions of the lease as a whole, we feel that this instrument conveyed some present interest. It is conceded that, if no present interest in the property was conveyed, this constitutes a testamentary disposition and the statutes applicable to the same would need be complied with.

The lessor bound the association not to, without his consent, "permit the title of the lessee to be transferred from the lessee." The lessor also covenanted and agreed that "he will not encumber his interest in the fee of said premises and will not sell or encumber his ownership of this lease."

It was further provided that, in the event the lessor sells, transfers, or encumbers, his interest in this leasehold, either voluntarily or involuntarily, then "the title to the said leased premises shall forthwith vest in and become absolute in the lessee."

The instrument designated "a lease" was both a lease and an executory contract for the sale of realty for a stipulated consideration, conveying a present interest to the association and so long as a Young Men's Christian Association existed to promote the worthy objectives for which it was designed. Manifestly, it was the grantor's intention that, upon compliance with the terms of the lease during his lifetime, or if

the association were in possession at the time of his decease, a sufficient consideration had been paid, and the association was thereupon to have title in fee conveyed to it by the executor after Murphy's decease.

It is incumbent upon the executor to carry out binding contracts made by decedent in his lifetime. It was proper for the executor to apply to the court for instructions, so that his good faith might be unimpeachable. 11B Cal. Jur. 198, § 789.

"It has been said that one of the duties of the executor or administrator is to carry out, subject to the directions of the court, binding contracts made by the decedent in his lifetime. If he does not complete contracts binding on the decedent, the estate becomes liable for damages for the breach." 2 Bancroft's Probate Practice (1928) 967, § 528.

"Where a contract is executory, and the representative can fairly and sufficiently perform all that the deceased could have performed, he may do so and enforce the contract." 11B Cal. Jur. 193, § 795.

"It is a fundamental principle of law that contractual obligations of a decedent which do not terminate at his death are binding on his executors and administrators in their representative capacity. . . . Under normal circumstances not only is it within the power of an executor or administrator to complete a contract made by his decedent, but it is part of his duty to carry out such contracts." 11 R. C. L. 163, § 173.

See, also, Annotations, 58 A. L. R. 437.

"The rule as stated by 24 Corpus Juris, 53, 54, and which is approved by the weight of judicial authority, and text-writers, is that 'executors or administrators are generally bound by all the covenants or contractual obligations of their decedents, except such as are personal in their nature and of which personal performance by the decedent is of the essence, or such as are terminated by decedent's death, even though performance is detrimental to the estate; and where the personal representative neglects or refuses to

carry out the contract of his decedent, the other party has the usual remedies, as in electing to treat it as rescinded and claiming damages.' . . . ' "Where the contract . . . is of an executory nature, and the personal representative can fairly and sufficiently execute all the deceased could have done, he may do so and enforce the contract." (Parsons on Contracts, sec. 131.) *E converso,* the personal representative is bound to complete such a contract, and, if he does not, may be made to pay damages out of the assets. (*Siboni v. Kirkman,* 1 Mees. & W. 418.)' (*Janin v. Brown, supra;* see, also, *McCann v. Pennie, supra; Quick v. Ludbarrow,* 3 Bulstrade Rep. 30; *Hawkins v. Ball's Adm.,* 18 B. Mon. (Ky.) 816; *Halyburton v. Kershaw as Adm., etc.,* 3 Desau. (S. C.) 105; *Billing's Appeal,* 106 Pa. 558; 2 Woerner's American Law of Administrators, 3d ed., p. 1041, sec. 328; 2 Williams on Executors and Administrators, 10th ed., p. 1348.)" *In re Burke's Estate,* 198 Cal. 163, 244 Pac. 340, 44 A. L. R. 1341.

"An instrument founded upon a consideration, whereby one agrees to pay another a definite sum, does not partake of a testamentary character simply because the time of payment be postponed until death. *In re Griswold's Estate,* 113 Neb. 256, 202 N. W. 609; *In re Conger's Estate,* 113 Misc. Rep. 129, 184 N. Y. Supp. 74; *Lawrence v. Scurry,* 187 Iowa 1055, 175 N. W. 22; *Foxworthy v. Adams,* 136 Ky. 403, 124 S. W. 381; Ann. Cas. 1912A 327, 27 L. R. A. (N. S.) 308." *Gostina v. Whitham,* 148 Wash. 72, 268 Pac. 132.

In the *Gostina* case it was urged that the instrument marked an attempt to make a testamentary disposition of a certain amount of the estate of decedent, and therefore is void as not being in proper form as a will. This court found the instrument was executed for a valuable consideration and did not constitute a testamentary disposition of the property.

In *Compton v. Westerman,* 150 Wash. 391, 273 Pac. 524, this court had under consideration an agreement providing that the maker was no longer obligated for

repayment upon the death of the payee prior to the time the note had been paid. We held that this agreement was not invalid as an illegal testamentary disposition of property.

In *In re Griswold's Estate,* 113 Neb. 256, 202 N. W. 609, 38 A. L. R. 858, cited in the *Gostina* case, *supra,* a decedent made a gift to the endowment fund of Nebraska Wesleyan University in the sum of five thousand dollars, due and payable at the donor's death. A claim was accordingly filed against the estate. It was urged that the instrument in question is testamentary in character and not enforceable as a claim against the estate. The court said:

"It is conceded, and is undoubtedly the law, that if a promissory note or any other written contract is supported by a sufficient consideration the fact that performance is postponed until after the death of the promisor does not of itself give to the instrument a testamentary character so as to require execution in accordance with the statute of wills."

Courts of equity uphold agreements entered into by owners of real estate for conveyance of fee title therein where claimant has been put into possession as tenant during the lifetime of the owner and has performed the conditions of the agreement entitling him to conveyance of title.

In *Book v. Book,* 104 Pa. St. 240, the writing in question provides, in part:

"The title to said farm, if not made to said M. H. Book in fee by said Jacob Book in his lifetime, shall be made so to him by said Jacob's legal representatives so as to assure to said M. H. Book, his heirs and assigns the land and premises herein before described."

The court held this to be a contract and not a will and hence not revoked by a subsequent will, and the court concluded:

" 'It is certainly the tendency of all the modern authorities to maintain the general doctrine, which may be stated as a formula, that whenever the party has the power to do a thing (statute provisions being out of the way) and means to do it, the instrument he employs shall be so construed as to give effect to his intention.' Tested by this principle the question is of easy solution. In form, the instrument upon which the contention hinges has all the features of a contract. It is impossible to read it without coming to the conclusion that both parties regarded it as an agreement for sale of the land, on terms therein specified. It contains mutual covenants of the parties by which they respectively bound themselves to the performance of certain things. They each acquired rights and assumed reciprocal obligations which took effect, not upon the death of Jacob Book but immediately upon the execution of the instrument. By the terms of the instrument, Jacob Book not only became entitled to the consideration money therein mentioned, but he acquired the right to the erection of a new dwelling-house or the repair of the old one, and thereafter during his life, to have the buildings so kept in repair, at the expense of his son Michael, as to make them reasonably comfortable and suitable for use. He also secured for his daughter Jemima the right to receive one hundred and fifty dollars annually, during life, and a room in the mansion house for her own use while she remained single. On the other hand, Michael acquired the right to take timber and other materials from the land for the building and the repairs he agreed to make; also the right to require his father to pay all taxes and 'to use the premises in such reasonable manner as not to deteriorate or depreciate their value,' and at his father's death, if not before, to have the legal title to the land assured to him by an appropriate conveyance. It is very clear that for the breach of some of these covenants, at least, the parties respectively would have had a right of action against each other. If Michael, for example, had refused to build the new house or make the stipulated repairs, it cannot be doubted his father would have had a right of action against him for damages. These and

other characteristics of the instrument clearly distinguish it from a will, which, being intended to take effect upon the death of the testator and not before, is ambulatory and revocable during his life, while, on the other hand, the paper under consideration is a contract between two parties, securing rights and creating obligations which are enforcible by the parties respectively, and not revocable at the pleasure of either without the assent of the other."

Another court said:

"We deem it sufficient to say that we understand it to be the settled law in this State that papers are to be construed and given effect according to the intent of the parties as appearing from the papers. See *Topp v. White,* 12 Heis. 168, and following; see also 1 Sneed 149; 2 Cold. 583; 2 Sneed 564; 2 Heis. 8 and 405; 7 Lea 105. And in ascertaining the intention the court will look to the situation of the parties, the motive that led to the agreement and the objects designed to be effected by it. Plainly stated, without the use of technical words or phrases, it is evident that Thomas Eastland desired his sons to enter into immediate possession of the land and to cultivate the same and to take charge of the personal property turned over to them and to operate the farm; but he also wished to secure a living for himself and wife until both of them should die, and it was his obvious purpose, as we think, to retain such possession and control as would enable him to secure these ends, and to provide that when his sons had complied with all the conditions imposed in the paper that the land was to be theirs and that the title should then vest and pass, but not until then, and if they should not, on the death of himself and wife, have complied with all the conditions, then the title was not to vest. We think this purpose is too plain for controversy, and it is no objection to the instrument, as we think, that the title was not to vest until after the death of the grantor, nor until the performance of certain conditions precedent. See *Topp v. White,* 12 Heis. 173, and other cases cited by counsel." *Savage v. Bon Air Coal, Land & Lumber Co.,* 2 Tenn. Chanc. App. 594.

In *Meck's Appeal,* 97 Pa. 313, a case was presented which is almost identical with the facts in the instant case, and the court held the instrument to be a contract and not a will and hence not revoked by the provisions of a subsequent will. The court said:

"The question may well be asked, whose will? It is a contract *inter partes,* and in this respect differs from *Turner v. Scott,* 1 P. F. Smith 126, and other cases in which a conveyance of land intended to take effect after the death of the grantor, was held to be a testamentary disposition of the property. Here the contract was expressly stated to be for the sale and purchase of the farm for a price agreed upon; the purchase-money to be paid after the death of the vendor, and the title to be made by his executors and administrators; in the meantime the vendee to occupy the premises under a stipulated rent."

See Annotation, 11 A. L. R. 88 (III c2w).

Upon application by the executor, the superior court may enter an order directing the executor to convey real property to the appropriate party if the decedent had already entered into a contract in writing to convey real property.

"If any person, who is bound by contract, in writing, to convey any real property, shall die before making the conveyance, the superior court of the county in which the estate is being administered, may upon application of the executor or administrator, without notice, make an order authorizing and directing the executor or administrator to convey such real property to the person entitled thereto." Rem. Rev. Stat., § 1558 [P. C. § 10005].

*Hyde v. Heller,* 10 Wash. 586, 39 Pac. 249.

"Specific performance of a decedent's contracts for the sale of land has been held to be within the jurisdiction 'pertaining to probate courts,' (and is in some States under certain conditions conferred upon Probate courts by statute) and, whether specific perform-

ance be authorized or not, under constitutional 'jurisdiction in matters relative to estates of deceased persons' a statute is valid conferring on the personal representative, under order of the Probate court, permission to convey, by deed, real estate which the decedent had contracted to convey." 1 Woerner, The American Law of Administration (3d ed.), 525, § 154.

It is true that actions to compel the specific performance of a contract belonged originally to the exclusive jurisdiction of courts of equity, but by conferring new power upon the law courts by statutory legislation, the former jurisdiction of equity to grant its relief has not been abridged by the above mentioned statute. *The Church of Christ of Palouse City v. Beach*, 7 Wash. 65, 33 Pac. 1053; 1 Pomeroy, Equity Jurisprudence, (2d ed.), 519, § 279.

"On the first proposition, whether the title to the estate that belonged to the deceased vested immediately in the heirs upon his death or not, it seems to us it is not necessary to decide; for the investiture, whatever it may be, or whenever it may occur, must be subject to claims that have legally attached by contracts with the deceased before his death. Or, in other words, the heirs take subject to the rights under the contract. The heir cannot take anything more than the devisor had at the time of his death, because the devisor could not will any more than he possessed. The will cannot possibly operate to abridge or destroy rights which have already attached, or enlarge the estate. All the right that Mrs. Heller had in this land, after ·she had entered into the contract of sale, was the right to the money which represented the purchase price (excepting, of course, the right to rescind under certain contingencies); that is all the interest she could have assigned or conveyed or devised. Her estate cannot be augmented by the mere fact of her death; and neither can it be diminished. Her heirs under her will must take just what she had a right to devise and nothing more, and she had a right to devise what she had and nothing more." *Hyde v. Heller, supra.*

█ Appellants urge that paragraph 17, by which Murphy imposed a restraint upon his right to alienate his interest, renders the instrument void. A reasonable restraint upon the alienation of property is not invalid. *Kentland Cole & Coke Co. v. Keen,* 168 Ky. 836, 183 S. W. 247, L. R. A. 1916D 924.

Here, Murphy had entered into a lease for the duration of his natural life. There is a division of authority as to whether a restraint of alienation for the lifetime of the grantor or grantee is valid or not. 2 Page on Contracts (2d ed.), 1400, § 693. We are of the view that a restraint upon alienation of property for the lifetime of the grantor is not invalid. *McWilliams v. Nisby,* 2 Serg. & R. (Pa.) 507, 7 Am. Dec. 654; *Gallaher v. Herbert,* 117 Ill. 160, 7 N. E. 511. The time which did expire between the execution of the instrument and the death of Murphy is so short that no unreasonable restraint upon the alienation of the property was, in fact, imposed.

We have carefully examined the cases cited by appellants, and find them distinguishable from the instant case by reason of the fact that this instrument partakes of the nature of an executory contract and created a present interest in the association. Complete possession over the property was given to the association, and it specifically provided Murphy was not to part with the fee, and in the event he attempted to do so, the fee was to forfeit immediately to the association. This instrument also provided, in effect, that performance under the terms of the lease, and with the association in possession at Murphy's death, should constitute sufficient consideration and the executor should convey title pursuant to its terms.

Coming now to a consideration of the cases cited by appellants, *United States Trust Co. v. Giveans,* 97 N. J. L. 265, 117 Atl. 46, two joint owners of certain

personal property attempted to pass title after death to a survivor by a certain instrument. The instrument passed no present interest and consideration was lacking.

*Glover v. Fillmore,* 88 Kan. 545, 129 Pac. 144, is distinguishable because the contract vendee did not have exclusive possession, but there was joint occupancy by the contract vendor and vendee, and no present interest was conveyed.

*Taylor v. Wilder,* 63 Colo. 282, 165 Pac. 766, differs because there was no present interest or possession and no interest was conveyed prior to death.

*Knight v. Knight,* 133 Miss. 74, 97 So. 481, is different because no present interest is passed. A life estate was reserved. An exclusive possession was to be enjoyed only after the death of the grantor.

*Young v. O'Donnell,* 129 Wash. 219, 224 Pac. 682, is distinguished in that no present interest passed to the grantee, the grantee was not given immediate possession, the grantor reserved a life estate, and, under the terms of the grant, the grant therein was uncertain of fulfillment.

*In re Losch's Estate,* 264 Pa. 58, 107 Atl. 375, is different because it vested no present interest nor is there any showing that possession was given to the grantee during the grantor's lifetime.

The judgment is affirmed.

BEALS, GERAGHTY, ROBINSON, and TOLMAN, JJ., concur.

MILLARD, J. (dissenting)—By the terms of his will, which was executed January 6, 1933, James B. Murphy, who died September 18, 1934, bequeathed to the Young Men's Christian Association, of Seattle, his private library and five thousand dollars for educational work. After making other devises and bequests, the testator

bequeathed the residue of his estate to seven nieces and nephews.

On April 30, 1930 (which was more than four years prior to the date of the death of the testator and approximately thirty-two months prior to the execution of the last will and testament of Murphy), Murphy entered into a contract, designated "lease," with the Young Men's Christian Association, under the terms of which he leased to the latter a tract of land near Bellevue. The tract was not specifically devised in the will, and, if the land constitutes a part of the estate of the decedent, it will pass under the residuary clause.

The term of the lease is "for the period of his [Murphy's] natural life and until his death, or until a guardian or trustee for any cause is appointed of his estate."

Under the rental provision of the lease, the lessee was required and agreed to pay, during the term of the lease, all power, light, heat, water, oil, and other service charges, and all taxes and assessments levied against the leased premises or against any improvements then or subsequently placed upon the leased premises.

The lessee agreed to keep the premises in a good, safe, and secure condition, to conform to all sanitary and health regulations of the state, to indemnify the lessor against accidents occurring on the premises or adjacent roadways, to keep the premises safe for use as a camp ground for boys, to make all necessary repairs, and to reconstruct and rebuild such structures as might become damaged or destroyed or obsolete.

It was agreed between the parties that all improvements placed upon the premises "shall at once become a part of the freehold."

Paragraph 6 of the lease imposes upon the lessee the

duty of the care and preservation of the trees and shrubs upon the premises.

The lessee was obligated by the terms of paragraph 8 of the lease to construct, prior to June 15, 1930, an adequate sewage system, an adequate water distributing system, and at least seven summer sleeping cabins for boys.

Paragraph 9 of the lease requires the erection and completion, before June 1, 1931, of a lodge building at a location to be agreed upon between the lessor and lessee, at a cost of not less than five thousand dollars. There are further provisions in this paragraph for the preparation of a baseball ground, a tennis court, and a volley ball court, on or before a designated date.

While, under the terms of paragraph 14, the lessor was not required to place upon the grounds any equipment, structures or appliances of any nature, he was privileged to do so,

". . . if he chooses with consent of the lessee and the same shall be deemed in the nature of a loan of such equipment, etc., is not properly cared for, the same may be removed at any time by him without notice, and this provision shall apply to personal property of every kind and nature which he may place thereon with consent of the lessee, but while such personal property is upon the grounds, the said lessee agrees to use the same solely for the purpose for which it was intended by lessor and shall be responsible for the care and preservation of same."

Paragraphs 16 and 17 of the lease read as follows:

"It is further covenanted and agreed that if the lessee shall become either insolvent or a bankrupt, or if a permanent receiver is appointed over lessee, or the said lessee fails to function as a going concern, this lease immediately terminates and ends without any notice of election or act or rescission on the part of the lessor; and it is further covenanted and agreed that if any portion of the said premises is taken for roadways, it shall not affect the validity or continu-

ance of this lease and in such event the award for the land taken and damage to the remainder will go to and become the property of the lessor and the award for the injury or destruction of any building will go to the lessee herein; and that if the whole of said premises or so much thereof as shall render the remainder unfit for camp purposes, is taken by eminent domain, the awards for the land taken shall go to the lessor and the awards for injuries or taking of the buildings and improvements shall go to and become the property of lessee, and lessee will be permitted to salvage any buildings or structures upon any remaining portion of said premises not taken, and this lease shall thereupon terminate and end.

"Lessee further covenants and agrees that it will not without the written consent of the lessor sublet the whole or any part of said premises, nor assign this lease, nor any interest therein, *nor permit the title of the lessee to be transferred* from the lessee involuntarily or by operation of law and will not, without such written consent, encumber the said lease-hold interest, or any part thereof, and that if consent is once given by the lessor to assign or encumber this lease-hold estate, as in this paragraph provided, the lessor shall not thereby be barred from afterwards refusing to consent to any further or other assignment or encumbrance. The lessor covenants and agrees that he will not encumber his interest in the fee of said premises and will not sell or encumber his ownership of this lease; and further covenants and agrees that if he shall sell or encumber his interest in the said premises or the said lease-hold, or in any property attached thereto or connected therewith, or if he becomes insolvent or bankrupt, or if a conveyance or encumbrance of the interest of the lessor in said premises or any property attached thereto or connected therewith, is made by operation of law, or if any conveyance, transfer or encumbrance thereof arises by virtue of the ownership of the said lessor either involuntarily or voluntarily, then in the event of anyone of the foregoing contingencies relating to the Bankruptcy encumbrance, or transfer of lessor's title, the title to said leased premises shall forthwith vest in and

become absolute in the lessee, free of any and all claims, attempted transfers or encumbrances of the said lessor, his representatives or assigns, and a suit in equity may be immediately instituted by the said lessee to quiet its title to said lands and premises for, or on account of, the breach of this covenant by lessor."

Paragraph 18 provides that any waiver of any of the terms or provisions of the lease must be in writing and can be proved only by a written instrument and not by parol evidence; that any waiver of any one breach of the lease by the lessee shall not be deemed or construed as a waiver of any subsequent breach of the same or any other provision of the lease; that any failure on the part of the lessor to exercise any right under the lease, or to promptly declare a forfeiture, or to promptly take advantage of any breach of the terms of the lease, shall not be construed as a waiver of any such right or such terms or conditions, nor of any breach thereof; that delay on the part of the lessor in promptly claiming any breach of the lease is not to be construed as an extension of time for the performance of any of the conditions or covenants to be performed by the lessee; that indulgences granted by the lessor or forbearance in enforcing any of the provisions of the lease shall not estop the lessor from later claiming such right,

". . . nor shall it be used in construing the lease more favorably to the lessee, and it is covenanted and agreed that the lessor, although he has not exercised his right under this lease for a period of time, may at any time thereafter strictly and rigidly enforce the same, to all intents and purposes as if no leniency had been shown by him."

The lessor and his agents were given by the terms of paragraph 19 the right at any time to enter upon the leased property for the purpose of ascertaining whether the lessee was performing its part of the

agreement. It is further stipulated that the lessee will not contract any debt for labor or material which may become a lien against the interest of the lessor in the premises, and that the lessee will and can not contract or create any mortgage lien against the interest of the lessor in the leased property, or against the lessor's interest in the improvements placed upon the leased premises.

Paragraphs 23 and 24 read as follows:

"Time is the essence of this lease in reference to all matters to be done and performed by the said lessee and especially in reference to the preservation of the trees, and the said grounds, and this lease shall be strictly construed against the lessee and if the lessee shall fail to fully keep and perform any of the covenants or provisions herein contained, and to be performed by it, then the lessor may, with or without process of law, re-enter the said premises, take possession thereof and remove all persons representing the lessee therefrom and remove personal property belonging to the lessee and store the same in some public warehouse at the expense of the lessee and this lease shall be fully terminated and ended, and the said lessee can never thereafter assert any right or privilege hereunder, lessee waives all notice of default required by statute, or otherwise.

"It is further covenanted and agreed that if the said lessee shall fully perform the terms of this lease and the said lease is in good standing at the time of the death, or the appointment of a guardian or trustee, of the lessor's estate, then in that event the said lands and premises shall become the property of the said lessee and if the said lessee is in possession at the time of the death of the said lessor or at the time of the appointment of a guardian or a trustee, it shall be conclusive proof against the lessor, his representatives and his estate that the lease is in good standing. It is understood on behalf of the lessor that the services to be rendered and the work to be performed, and the expenditures to be made by the said lessee in the fulfillment of the provisions in this lease, is a sufficient

consideration for the passing of the title of the said lands and premises to the lessee upon the death of the lessor, or sooner upon the appointment of a guardian or a trustee, and said transfer and passing shall not be regarded as a gift or devise, but for a good and sufficient consideration, and the executors or administrators or personal representatives of said lessor are hereby authorized, directed and empowered upon his death, or sooner upon the appointment by his deed or otherwise of a guardian or a trustee to manage his estate, to execute any and all conveyances which may be necessary and proper to vest in the said lessee."

The Young Men's Christian Association went into possession of the property in question at the time of the execution of the lease, and has been continuously in possession at all times since that date.

The Young Men's Christian Association filed a petition in the probate proceeding, in which petition it prayed for a decree directing the executor to execute and deliver to it a deed to the premises in question. The demurrers of the executor and several of the residuary legatees to that petition were overruled. Thereafter, answers were filed in behalf of the residuary legatees and in behalf of the executor. As an affirmative defense, the residuary legatees pleaded numerous violations of the terms of the lease. Before the introduction of any evidence, the affirmative defense was stricken by the trial court, on the motion of the petitioner. Trial to the court resulted in a decree requiring the executor to make the conveyance of the property to the petitioner. Three of the residuary legatees have appealed from that decree.

My view of the disposition that should be made of the appeal obviates the necessity of discussion of the assignment that the trial court erred in striking the affirmative defense of the residuary legatees.

Counsel for appellants urge that paragraph 24 of the contract between the decedent and the respondent is

testamentary in character, and, as the contract was not executed with the formality required for a valid will, the provisions are not enforceable.

Where the provision of an instrument, in the form of a deed or contract, postponing its taking effect until after the death of the grantor, is construed as passing a present interest in the grantee, the instrument is a deed or a contract. Where, however, the provision postponing its taking effect until after the death of the grantor is construed as passing an interest not to take effect until the death of the grantor or maker of the instrument, the instrument is testamentary in character, notwithstanding that, in form, it may be a deed or contract. That is to say, the rule is that an instrument containing a provision postponing its taking effect until after the maker's death, which passes an interest that is revocable and ambulatory, is testamentary in character. Annotations, 11 A. L. R. 39; Annotations, 76 A. L. R. 640; *Young v. O'Donnell,* 129 Wash. 219, 224 Pac. 682.

Paragraph 24 of the lease provides that, at the time of the death of the lessor, the said lands and premises shall become the property of the said lessee. Manifestly, the vesting of title in the respondent is conditioned upon Murphy's death. Unless some present interest passed to the respondent at the time of the execution of the lease, the provision in paragraph 24 is testamentary in character and, of course, is not enforceable unless executed with the formality required by the statute for a will.

We should be mindful of the fact that the transfer of the leasehold estate to the respondent is not the passing of such an interest as is required by the foregoing rule. That the lease terminated absolutely the very instant of Murphy's death is too clear for argument. The leasehold interest which passed to the re-

spondent passed by virtue of the leasing contract and not under the provisions of paragraph 24 of the contract. Patently, the present interest required to be transferred to the respondent, within the meaning of the rule, is an interest which will survive the death of the grantor.

The leasehold interest taken by the respondent as lessee was no different interest—in fact, it was the same interest—which it would have received if paragraph 24 had not been a part of the contract. Paragraph 24 does not provide, expressly or impliedly, that Murphy is obligated to make a will in behalf of the respondent or to devise the land in question to it. The paragraph provides that the property is to become, on the death of the lessor, the property of the respondent. This is the same direction that would have been given in an instrument expressly named as, and intended by the maker to be, a will.

Murphy provided by paragraph 24 that the services to be rendered and the work to be performed by the respondent in the fulfillment of the provisions in the lease constituted a good and sufficient consideration for the transfer of the property to the respondent: "transfer and passing shall not be regarded as a gift or devise but for a good and sufficient consideration."

Counsel for respondent argue that, in the determination of whether an instrument is a contract or a will, the dominant purpose of the maker, as manifested in such instrument, must control. 68 C. J. 619. It must be borne in mind, however, that whether an instrument is a will, a deed, or a lease, depends upon the effect and operation of such instrument, to be determined by its own terms.

The majority opinion states there is no doubt that it was the intention of Murphy to convey the land described in the instrument to the association upon com-

pliance with the consideration therein stated; that Murphy's intention, as expressed and reflected in the entire instrument, was to withhold the vesting of the fee title in the association until after his death. The majority opinion recites:

"While conceding that the court should make every effort to give effect to decedent's intention, the question presented is whether or not the court is precluded from giving effect to that intent . . .

"The essential distinction between a contractual obligation and a testamentary disposition is that the contract contemplates performance, in part at least, during the lifetime and vests some quantum of present interest in the other party.

" '. . . So, although an agreement involves or effectuates a disposition of property belonging to a party thereto, it is valid as a contract, and is not a will, *where it contemplates performance, in part at least, during his lifetime, or vests a present interest in the other party,* . . . ' 68 C. J. 618, § 238." (Italics mine.)

The citation of 68 C. J. 618, § 238, does not sustain the position taken in the majority opinion. No present interest in the property vested in the respondent. Another portion of § 238, Vol. 68 C. J., p. 619, under the subject of Wills, recites that:

"An instrument, however, although partly or wholly in the form of a contract, is testamentary in character, and operative, if at all, as a will, where it is to have no operation during the party's lifetime, and disposes or attempts to dispose of his property at his death, and not before."

We should not lose sight of the rule that whether the instrument is, in form, a deed or a contract, if the transfer of the property depends and is conditioned upon the death of the grantor and no present estate passes, the instrument will be held to be a will. If such instrument is not executed with the formality

the statute requires for a will, such instrument is unenforceable. The contract discloses no intention on the part of Murphy to transfer to the respondent any present interest, other than the leasehold interest, and that interest terminated at Murphy's death.

Paragraph 16 of the lease provides that, in the event of the insolvency or bankruptcy of the respondent, or if a permanent receiver is appointed over it, or if the respondent fails to function as a going concern, the lease shall immediately terminate. Those provisions, together with the forfeiture provisions in paragraph 23 and the provisions against waiver in paragraph 18, sustain the position of counsel for appellants that whatever passed to the respondent lessee was nothing other than an ordinary leasehold interest. However repetitive, it should be stressed that a reading of the lease clearly discloses that the lessor did not intend to vest in the lessee prior to his death any interest or estate other than the leasehold interest which terminated at the time of Murphy's death.

In *United States Trust Co. of Paterson v. Giveans*, 97 N. J. L. 265, 117 Atl. 46, the deceased and Mary E. Giveans executed an instrument, reading as follows:

"We, Jane C. Wrigley and Mary E. Giveans, have on this day purchased a safe made by the American Safe Company of Anderson, Indiana. Number of safe is 7169, under the following agreement: Upon the death of either one the safe and personal contents becomes the property of the other, cash, bank book, and bonds, etc.

"Jane C. Wrigley (Seal)
"Mary E. Giveans (Seal)

"Signed, sealed and delivered in the presence of Susan I. Gliff, Robert W. Patterson."

An action was instituted by the executor of Mrs. Wrigley's will to replevy the safe and its contents mentioned in the foregoing instrument. The question

on the appeal was whether, upon the death of Mrs. Wrigley, the above quoted agreement had the legal effect of transferring her title to the contents of the safe to Mrs. Giveans. In holding that the agreement, in which the language is almost the same as the language of Murphy in paragraph 24 of the lease, had no such effect, the court said:

"For the respondent it is argued that the agreement made between Mrs. Wrigley and the defendant is not a contract founded upon a consideration, but this is not so, because upon the death of either party to it the safe and contents were to be the property of the other; each in consideration of acquiring the other's property undertook to give up hers at death.

"But, nevertheless, the document could not operate to transfer any title to the contents of the safe to the defendant, for the obvious reason that it was a contract in the nature of a will; it was a contract which attempts to dispose of property after death, after the manner of a will, without being executed as a testament in conformity with the statute of wills."

See, also, *Reed v. Hazelton,* 37 Kan. 321, 15 Pac. 177, which sustains the rule that, if the instrument passes a present interest, it is a deed or a contract, although the right of possession may not accrue until some future time; but if it does not pass any interest or right until the death of the maker, it is testamentary.

On July 25, 1907, Dillie S. Aldrich executed her last will and testament. On August 1, 1907, she executed and delivered the following written instrument:

"For the sum of one dollar and other valuable consideration, I hereby transfer to Ozetta Marshall my library, of which she is to take immediate possession.

"At my death she is to have my sewing machine, table silver, dishes, table linen, and any and all other personal property I may have in my possession at the time of my death."

A month later Mrs. Aldrich died. The plaintiff, in *Taylor v. Wilder*, 63 Colo. 282, 165 Pac. 766, who prior to her marriage was Ozetta Marshall, instituted an action in which it was contended that, under the above quoted instrument, she became and was the owner of all the personal property of which Dillie S. Aldrich died seized or possessed. The court held, as to the library, it was plainly the intention of the maker that the transfer should be effective immediately, but that, as to the other property, it was manifestly the intention of Mrs. Aldrich that no interest should pass until her death, and that the latter provision was therefore testamentary in character and was unenforceable because not executed as a will. The court said:

"Under this proposition it is essential to determine whether the writing in question is in reality a contract or only testamentary in character, or in part the one, and in part the other.

"It is elementary that the legal character of instruments of this kind depends upon whether the maker intended that ownership or interest should before his death pass from himself and vest in the other party upon the execution of the paper, or whether such ownership or estate should pass only upon his death; and this in turn depends upon the provisions of the instrument, which may be aided by circumstances attending its execution. And the rule is that whatever may be the form of the instrument, or the circumstances attending its execution and delivery, if the intention of the maker was that it should become effective only after his death, it is a will, but, if presently effective, it is a contract. And it is immaterial what the maker calls the instrument for the law fixes its character and effect. The rule is well stated in *Powers v. Scharling*, 64 Kan. 339, 343, 67 Pac. 820, as follows:

" 'In determining whether an instrument be a deed or will, the question is, Did the maker intend to convey any estate or interest whatever to vest before his death and upon the execution of the paper? Or, on the other hand, did he intend that all the interest and

estate should take effect only after his death? If the former, it is a deed; if the latter, a will.

" 'If, however, the testator (the maker of the instrument) intended that the grant should take effect upon the execution of the instrument as to certain of his property then in possession, and as to certain other of his estate not until his death, the instrument, having been properly executed, would be a contract, and irrevocable as to that part in possession and to which it was intended to vest the title, and testamentary as to the residue; . . .'

"Examining the instrument here involved, we are certain that the maker thereof intended that it should be effective immediately in passing ownership of the library, and as to all other property therein mentioned, not until her death. The express words of the first clause of the instrument are immediately effective and pass a present interest. This is not true, however, as to the property covered by the second clause. On the contrary, it is clearly evident that no interest therein was intended to pass until the death of Mrs. Aldrich. She never parted with the right to deal with such property as she pleased. Had she attempted to dispose of it, or to use the money in the banks said to be a part thereof, Mrs. Taylor could not have interfered. This demonstrates that the instrument was not intended to become operative at once so as to vest ownership of such property in Mrs. Taylor. . . .

"A deed or bill of sale must take effect upon its execution or not at all. It is unnecessary that it convey or pass an immediate interest in possession; but it must become effective in passing the interest or estate at its execution. A will is quite the reverse and can only operate, that is, become effective in passing an interest, after death. And an instrument may, as to one part, be a contract of sale, and as to another part, a will. *Robinson v. Schly and Cooper,* 6 Ga. 515. So we hold the second clause of this instrument testamentary in character; but the instrument, not being executed in the manner and form required in the execution of a will, is non-effective."

In *Knight v. Knight,* 133 Miss. 74, 97 So. 481, W. T. Knight executed an instrument, reading as follows:

"For and in consideration of the sum of ten dollars to me this day cash in hand paid, the receipt of which is hereby acknowledged and for the further consideration of love and affection which I have for my two daughters Corneil Carmarck Knight and Dorothy Thomas Knight, who are now both minors, I convey and warrant to them and their children after them, a remainder interest in certain tracts or parcels of land situate in the county of Tunica and state of Mississippi, the same being more particularly described as follows: [Description of land omitted.]

"But this deed is made under the following conditions, to wit:

"That I, Woodson T. Knight, reserve for my benefit and for the benefit of my assigns a life interest in all of said lands and the possession, use and occupation of the same during my life after which this conveyance is to go into effect and my said daughters at the time of my death are to become possessed of an indefeasible title in fee simple to all of said lands with remainder interest in their children at the time of their death.

"Witness my signature this the 7th day of Sept., 1917. (Signed) W. T. KNIGHT."

The question presented by the appeal in that case was whether the instrument was a will or a deed. In holding the instrument to be testamentary, the court said:

"In determining whether an instrument is a deed or a will the controlling question is: Did the maker intend to convey any estate or interest whatever to vest before his death and upon the execution of the writing? Or, on the other hand: Did he intend that all the interest and estate in the land attempted to be conveyed should take effect only after his death? If the former, it is a deed; if the latter, a will. It is wholly immaterial whether he calls it a will or a deed, for the instrument will have operation according to its legal effect. *Wall v. Wall,* 30 Miss. 91, 64 Am. Dec. 147; *Thomas v. Byrd,* 112 Miss. 692, 72 So. 725; *Simpson*

*v. McGee,* 112 Miss. 344, 73 So. 55, 11 A. L. R. 4; *Cox v. Reed,* 113 Miss. 488, 74 So. 330, 11 A. L. R. 5; *Kelly v. Covington,* 119 Miss. 658, 81 So. 485.

"In the first paragraph of this instrument the maker, W. T. Knight, attempts to convey to his two daughters 'and their children after them' the remainder interest in his lands. Then in the last paragraph, following the description of the lands, he reserves to himself the use and occupation of said lands during his life (quoting from the instrument), 'after which this conveyance is to go into effect and my said daughters at the time of my death are to become possessed of an indefeasible title in fee simple to all said lands with remainder interest in their children at the time of their death.'

"Although the maker probably intended to reserve to himself the use and occupation of his lands for the period of his life with remainder in his daughters to take effect before his death, the instrument plainly fails to so provide. On the contrary it provides in unmistakable terms that the interest attempted to be conveyed to his daughters shall not take effect until after his death. In other words, no interest was conveyed to his daughters which was to take effect before the death of the grantor. He parted with nothing to take effect during his lifetime; he could have at once conveyed a fee simple title to some one else. Therefore his daughters got nothing.

"We hold, under the rule laid down in the above authorities, that this instrument is a will and must fail because not executed and attested according to our statute of wills. The court below so held."

In the case at bar, the contract quite clearly discloses, as stated above, the intention on the part of Murphy to transfer to the respondent, after his death, the property in question, in the event the respondent carried out its part of the contract during the life of Murphy, and if Murphy had not, as he had a right to do, canceled the contract. The contract does not disclose any intention on the part of Murphy to transfer to the respondent any present interest other than the

leasehold interest, and that interest terminated the instant Murphy died. An apt authority is *Glover v. Phillmore,* 88 Kan. 545, 129 Pac. 144. The facts in that case are as follows:

A widow entered into an agreement for maintenance by which she furnished land for the joint use and occupancy of herself and a distant relative. Under that contract, she had the right to use and make her home in the house on the land during her life. This distant relative, one Glover, was to occupy and cultivate the land, keep it in reasonable repair, pay the taxes, and provide for and maintain the other party in health and sickness in a comfortable manner, and in lieu of clothing, to pay her one hundred dollars on January 1st of each year following the execution of the agreement. Mrs. Patterson covenanted that, upon her death, the agreement should stand for, convey and vest in Glover the fee simple title as if a good warranty deed upon sufficient consideration had theretofore been made. She retained the option to terminate the contract upon the failure of Glover to carry out his part of the contract, in which case Glover was to surrender possession to Mrs. Patterson. Before the land could be occupied, Mrs. Patterson died. Glover assisted for a few weeks in her care, and he brought her remains for burial to the neighborhood where the land was located, paying the medical and funeral expenses. Following Mrs. Patterson's death, Glover conveyed the land to his father, who, as plaintiff, brought an action against the heirs of Mrs. Patterson to quiet title to the property. The trial court held that the agreement was void, and in affirming the judgment, the supreme court of Kansas said:

"The plaintiff argues that the instrument disclosed an intention on the part of Mrs. Patterson to vest a present interest in the real estate in the plaintiff's grantor, and that regardless of technical rules of con-

struction such intention should be given effect and control. The defendants insist that the instrument is testamentary in character and void for failure to comply with the statute regarding its attestation, or that it is an executory contract for future possession. We think the agreement itself and the statements shown to have been made by Mrs. Patterson indicate quite clearly her intention that in case he carried out his part of the contract during her life the property should then be his, but that it should be hers to all intents and purposes so long as she lived. She might have conveyed the property to him and taken back an agreement for her support, or she might have contracted therefor and made or agreed to make a will leaving the property to him at her death; but what she did was to contract in the way already set forth, and it does not appear that any present estate passed; and if the instrument is testamentary in character it cannot be upheld as a will for the reason that the statutory requirements touching execution and attestation were not complied with.

"In *Reed, Ex'r. v. Hazleton,* 37 Kan. 321, 15 Pac. 177, the contract provided, among other things, that Ricket should retain full possession of the land during his lifetime and make such improvements as he felt able to make; that Hazelton should properly care for and see to his wants in health and sickness, Hazelton to have his home with Ricket, 'and after the death of the said Henry Ricket, of the first party, the right and title of the north half of the northwest quarter . . . shall vest in said John Hazleton, of the second party.' This part of the contract was held to be testamentary, the rule being announced that if the instrument passes a present interest it is a deed or a contract, although the right of possession may not accrue until some future time; but if it does not pass any interest or right until the death of the maker it is testamentary."

In the annotation, under subdivision (k), on page 100 of 11 A. L. R., are collected cases in which instruments of the kind similar to the one in the case at bar are held to be testamentary. In the cases under that

subdivision of the annotation, emphasis is placed upon the provisions in the instrument that the transfer shall be conditional upon the survivorship of the grantee. Those cases have to do with natural persons. Similar in principle is the case at bar, in which is an analogous provision in paragraph 16 of the lease, under the terms of which the lease terminates in the event of the insolvency or bankruptcy of the respondent lessee, or the appointment of a receiver for it, or its failure to function as a going concern. This buttresses the position of counsel for appellants that there was no intention on the part of Murphy to transfer presently any interest whatever, except the ordinary leasehold interest flowing from the lease as a lease.

In *Young v. O'Donnell*, 129 Wash. 219, 224 Pac. 682, we held that a deed from an old man to his son is of a testamentary character and conveys no present interest, although, in consideration of caring for the grantor until his death, where the deed provides that it is effective only after the death of the grantor, that the grantor reserves absolute dominion and control during his life, and that the deed is to be null and void in the event of the death of the grantee prior to the decease of the grantor. The conveyance in the case cited provided that, in the event the grantee died before the grantor, the deed should be null and void; that the deed was to take effect only after the death of the grantor

". . . and the grantor herein reserves to himself a life estate in the above premises and is to have and to use and to retain absolute control until the death of the grantor."

The subsequent conveyance of the identical premises, in consideration of love and affection and a nominal consideration, to his daughter further evidenced the intention of the grantor, as well as the understand-

ing of the grantee, that no present interest was by the deed conveyed to the son. That case lends some support to the position of appellants, although it could have been decided on the ground of failure of consideration.

The direction of Murphy in the lease to his executor to exact the necessary conveyances to vest title in the respondent lessee is a recognition on the part of Murphy that no title was to vest until his death. Such a direction, however, does not render inapplicable the rule upon which the appellants rely.

In *In re Losch's Estate*, 264 Pa. St. 58, 107 Atl. 375, a paper signed by the deceased giving his home to his housekeeper for special favors and services, and ordering his executor after his death to sign a deed and deliver it to her, was held testamentary in character, because what was to be done to make it effective had to be done by the executor. That paper reads as follows:

"I will give my home Furnished as it now is all of 619. Linden st. to my present housekeeper who is now takeing care of me to Angelina Kern. For special favors and honest kind work and good service she has done for me during the last three month and before. she shall have my home which I promised to her. Also for the last three years past for staying with me. to the end of my life. I name and order my executor James Kressler. lawful to sign said Deed over to in her name. and after my death to hand and deliver said same deed to her. Angelina Kern. Witness my hand and seal. (Signed) Charles Losch (Seal) In the presence of Angie Kern."

In holding the writing to be testamentary, the court said:

"The paper signed by the decedent, which appellant insists is a contract to be specifically enforced, is clearly testamentary. *Wilson v. Van Leer*, 103 Pa. 600; *Megary's Est.*, 206 Pa. 260. It vested no present interest,

but only appointed what was to be done after the death of the maker, and this is the test of its character . . ."

The majority express the view ". . . that a restraint upon alienation of property for the lifetime of the grantor is not invalid." The majority opinion then recites:

"The time which did expire between the execution of the instrument and the death of Murphy is so short that no reasonable restraint upon the alienation of the property was, in fact, imposed."

I fail to appreciate the pertinency of the statement to the effect that no reasonable restraint was imposed upon the alienation of the property because the time between the execution of the instrument and the death of Murphy was so short. If a restraint upon alienation of property for the lifetime of the grantor is not invalid, I fail to grasp the materiality of the statement. If such a restraint is invalid, surely there is no rule of law which would make the restraint valid because the time which expired between the execution of the instrument and the death of the grantor was "so short" or long.

I note the holding *In re Griswold's Estate,* 113 Neb. 256, 202 N. W. 609, 38 A. L. R. 858, cited in *Gostina v. Whitham,* 148 Wash. 72, 268 Pac. 132, to which attention is directed in the majority opinion. I agree that the fact that a promissory note is by its terms payable at or after the death of the maker does not give that note a testamentary character so long as it creates or recognizes a present indebtedness or obligation.

"Where, however, an instrument, although in form a bill or note, is intended to have no operation until the death of the maker, it is not contractual, but of the nature of a will." 68 C. J. 619, § 239.

I deem what I have said is a sufficient answer to any question presented by respondent respecting the

restriction in paragraph 17 of Murphy's right to sell or encumber the fee. Read as a whole, the contract in question neither transfers nor reveals any intention on the part of the decedent to transfer to the respondent any interest whatever in the premises other than the leasehold interest, prior to his death. The determinative question of whether Murphy transferred to the respondent any present interest, other than the leasehold interest, in the property, is answered in the negative.

It follows that the decree should be reversed.

STEINERT, C. J., MAIN, and BLAKE, JJ., concur with MILLARD, J.

