(31 Misc. Rep. 231.)

## DIMON v. KEERY.

(Supreme Court, Trial Term, New York County. April, 1900.)

1. GIFTS—INTER VIVOS.

An attempt by the payee of a demand note to make a disposition of the debt during his lifetime in favor of the maker, by signing a memorandum at the foot of the note at the time of its execution to the effect that the note shall be void at the payee's death, cannot be upheld as a gift causa mortis, in the absence of evidence that the payee was in apprehension of death when the paper was signed.

2. SAME—CAUSA MORTIS—PAROL TRUST.

> An attempt by the payee of a demand note to make a disposition of the debt during his lifetime in favor of the maker, by signing a memorandum at the foot of the note at the time of its delivery to the effect that the note shall be void at the payee's death, cannot be upheld as a gift inter vivos, nor as a parol trust, since the maker acquires no right to the absolute ownership of the money in praesenti.

Action by Charles L. Dimon, as administrator, etc., against Martha Keery. Judgment for plaintiff.

Wilder & Anderson, for plaintiff.
T. H. Friend, for defendant.

SCOTT, J. The defendant, being indebted to Stephen C. Dimon, the plaintiff's intestate, executed a promissory note on March 1, 1889, for $6,000, payable to his order on demand. At the bottom of the note Stephen C. Dimon wrote and signed the following: "At my death the above note becomes null and void." The defendant by her answer admits the receipt of the money from Dimon on or about February 26, 1889, and avers that she paid to said Dimon the interest thereon during his lifetime, and up to the 14th day of May, 1892. She further alleges that for and in consideration of said sum she and the said Dimon made an agreement in writing with reference thereto, executed and bearing date on March 1, 1899, and signed simultaneously by herself and the said Dimon. This agreement consists of the promissory note signed by the defendant, and the above-quoted memorandum signed by Dimon; both being written on the same piece of paper. And she further alleges that the said agreement expresses the whole of the terms, conditions, and agreement upon and under which Dimon gave to her, and she received from him, the said sum of $6,000. During the course of the trial the parties consented to the withdrawal of a juror, and submitted the issues to the court without a jury. It will be seen that the agreement relied upon by the defendant is, in effect, stating it most favorably for her, that she should continue indebted to Dimon so long as he lived, and should repay him the amount advanced whenever he might demand it, but that at his death, never having demanded payment, she should be relieved of any liability to repay the money to any one. In other words, the $6,000 should be considered as a loan to her during Dimon's lifetime, and should ripen into an absolute gift at his death. It is difficult to see how her defense can prevail. It was not a gift of the money in praesenti, because, by the very terms of the note, it was to be considered, so long as Dimon lived, as a mere indebtedness, to be repaid on demand. It is not to be upheld as a gift causa mortis, because there is no evidence that, when the paper was signed, Dimon was in apprehension of death. It was not a present agreement to give her the money, because it clearly appears that, for the indefinite period of Dimon's life, it was to be treated purely and simply as an indebtedness from defendant to him, and that it was so treated is evidenced by her payments of interest thereon. Dimon's obvious intention was to retain in his lifetime the right to compel the repayment of the money, and at his death, if he had not then enforced repayment, to give the $6,000 to the defendant. Under

the agreement evidenced by the note and accompanying memorandum, the defendant was to acquire no right to the absolute ownership of the money in præsenti. She was to acquire it only in futuro. As was said by the court of appeals in Sullivan v. Sullivan, 161 N. Y. 555, 56 N. E. 117:

"This is the test which marks the essential difference between a valid gift inter vivos, or an effectual parol trust, and the mere expressed desire or intention to do that in the future which can only be done by will."

There was clearly no gift inter vivos, because Dimon expressly reserved the right to demand and recover the money at any time during his lifetime; thus treating it, not as a gift to the defendant, but as an indebtedness from her to himself. The transaction lacks every element of a trust. It was an attempt to make during his lifetime a disposition of his property in favor of the plaintiff, which disposition was to have no effect except upon his death, and was revocable at any time during his life; for a demand and collection upon the note would have effectually revoked the intended gift. Such a disposition of property can only be made by a will. Gilman v. McArdle, 99 N. Y. 461, 2 N. E. 464; In re Diez, 50 N. Y. 93. It is true that Dimon's memorandum might be held sufficient to destroy the efficacy of the note as an evidence of indebtedness. The plaintiff, however, was not compelled to sue upon the note, and, in point of fact, did not do so. His action is upon the indebtedness, of which the note is merely the evidence. The payment of the money is admitted by the answer to have been made some days before the note was executed. The indebtedness or obligation to repay it accrued at once. It is true that Dimon might have given defendant the money on February 26th, but that he did not do so is evidenced by her promise to repay it on demand, and her actual payment of interest up to the time of his death. Whatever obligation was created by the payment of the money on February 26th was not discharged by the giving of the note on March 1st, because the note of a debtor cannot operate to discharge an antecedent indebtedness. It may postpone the right to sue, but as soon as the note, by its terms, becomes payable, the creditors, if then in possession of the note, may ignore it, and sue on the original indebtedness. The plaintiff is entitled to a judgment for $6,000, with interest from September 1, 1893, the date on which the action was begun, amounting to $2,381, with an extra allowance of $250.

Judgment for plaintiff, with extra allowance.