[No. 21485. Department Two. December 31, 1928.]

JOHN R. COMPTON, *as Administrator, Appellant,* v.
ELSIE E. WESTERMAN, *as Executrix,*
*Respondent.*[1]

*M. E. Sheldon* and *Herr, Bayley, Croson & Innis,* for
appellant.

*Peters & Powell* and *F. C. Kapp,* for respondent.

FRENCH, J.—Mrs. Harriet Ray Westerman and
Frank R. Westerman, her son, more than ten years
ago, made the following agreement:

[1] Reported in 273 Pac. 524.

"AGREEMENT

"This agreement, made this eighteenth day of April, 1917, between Harriet Westerman, party of the first part, and Frank R. Westerman, party of the second part, WITNESSETH: That the party of the first part does this day lend to the party of the second part the sum of $7,000, to be repaid to her on or before July 1st, 1919, with interest at 5% per year, and the party of the second part agrees to so pay the same.

"As collateral security for the payment of said money, the party of the second part does this day deposit with the party of the first part, certificate No. 4 for three hundred (300) shares of the capital stock of the Westerman Investment Co., a corporation. Upon the repayment of said money and interest, said stock is to be returned by the said party of the first part to the party of the second part, his heirs and assigns. If, however, the party of the first part should die prior to the time that all of said money has been repaid, then in that case, the said Frank R. Westerman shall be relieved from any further liability for the repayment of said money, and said stock shall thereupon be immediately returned to him.

"Mrs. Harriet Westerman,<br>
"Frank R. Westerman.

"In presence of us:
 "Jay C. Allen,
 "E. R. Wilkins."

Frank R. Westerman died April 18, 1919. Mrs. Harriet Westerman died July 31, 1927. On the death of her son Frank, Harriet Westerman properly filed her claim against her son's estate. Nothing further was done pertaining thereto until after the death of the mother.

John R. Compton, an elder son of Harriet Westerman by a prior marriage, was thereafter appointed administrator of the estate of Harriet Ray Westerman, deceased, and this action was brought to secure the payment of the loan evidenced by the above agree-

ment, together with other items of claimed indebtedness.

As to one of the smaller claims, the lower court found that recovery should be had. As to several other claims, appellant admits that there was no testimony to support them; and as to the claim evidenced by the written agreement above set forth, the lower court held that by the terms thereof the amounts unpaid at the time of the mother's death were annulled, cancelled and discharged. This appeal follows.

 Appellant argues that that part of the agreement providing that the obligation for repayment terminates upon the death of Mrs. Westerman is invalid for the following reasons: Because there was an attempted gift, which was not completed by delivery, which was absolute and unconditional, making it a gift *inter vivos;* second, appellant argues that an agreement such as this is in reality an attempt to make a testamentary disposition of property otherwise than in the manner provided by our statutes.

Contracts of the same general character as the one set out are not uncommon, and are, generally speaking, made between parties who are closely related. Generally they are not drawn with that particularity and care evidenced by the above instrument.

The principal case relied upon by appellant is *Dimon v. Keery,* 31 Misc. Rep. 231, 64 N. Y. Supp. 1091. Martha Keery executed and delivered to one Dimon her promissory note agreeing to pay on demand the sum of six thousand dollars, with interest. At the time this note was executed and delivered, Dimon wrote upon the same sheet of paper upon which the note was written the following words: "At my death the above note becomes null and void."

In the above case, as reported, there are many expressions of opinion by the trial judge which undoubt-

edly support the appellant's contention, but the case was thereafter appealed and is found reported in 54 App. Div. 318, 66 N. Y. Supp. 817. The appellate court bases its decision upon the following reasons:

"The note was competent evidence to show that this sum of money which had been advanced by the plaintiff's intestate to the defendant was a loan, and that fact being established the plaintiff was entitled to recover the amount of that loan irrespective of the continued existence of the note. Assuming that the note for any reason became void upon the death of the testator, the obligation to repay the loan still existed unless such obligation had been discharged by payment, release or some other method . . . This endorsement upon the note was made at the time of its execution, but so far as appears no copy of this endorsement was executed and delivered to the defendant. *It was unilateral, without consideration, contained none of the elements of an agreement between the parties.* It was a mere declaration of the payee as to his intention regarding it not consummated by delivery."

A case more nearly parallel to the one which we here have under consideration is that of *Novak v. Lovin,* 33 N. D. 424, 157 N. W. 297. There the administrator of the estate of one Barbara Mikesh sought to recover the sum of eight hundred dollars claimed to be due on two promissory notes. The first note bore the endorsement, "This note is non-negotiable"; the second note bore the endorsement,

"This note is not negotiable or assignable, and will be paid to the person named thereon only."

Prior to the execution of the notes, the following instrument was executed and delivered:

"Voss, N. D., Dec. 22, 1897.
"I, Barbara Mikesh, being desirous of placing some money with my daughter and son-in-law, Mary E. and J. H. Lovin, which I wish to save for my declining years, I agree to place said moneys with them on the following conditions—that I accept such note or notes

for said moneys and such rate of interest as the said Mary E. and J. H. Lovin see fit to give me, and further that said note or notes to be hereafter given for said moneys shall be non-transferable and shall be payable to no one but myself, and that in case I should die while said notes are in force they shall at once become null and void and not collectible.''

In passing on this case the court used the following language:

''The clear intention of the intestate was to exonerate the makers of the notes from all liability for any sum unpaid at the date of her demise. She did not intend, in other words, that the defendants' obligations on the notes should survive after her death. On the contrary she intended that the notes should have no post mortem effect or validity.

''The question for decision, therefore, is whether such intent can be given effect. We think this question should be answered in the affirmative. We fail to see, for reasons already given, how exhibit ''A'' can be construed as testamentary in its nature. The authorities which seem to be in any way in point support our view. *Bedford v. Chandler (Perrin v. Chandler)*, 81 Vt. 270, 69 Atl. 874, 17 L. R. A. (N. S.) 1239, 130 Am. St. 1057; *Blanchard v. Sheldon*, 43 Vt. 512; *Hackett v. Moxley*, 65 Vt. 71, 25 Atl. 898; *Green v. Tulane*, 52 N. J. Eq., 169, 28 Atl. 9; *Sebrell v. Couch*, 55 Ind. 122; *Hegeman v. Moon*, 131 N. Y. 462, 30 N. E. 487; *Carnwright v. Gray*, 127 N. Y. 92, 27 N. E. 835, 12 L. R. A. 845, 24 Am. St. 424.''

A careful examination of the cases cited seems to amply support the court in the conclusion reached.

In the case at bar, when the loan was made by the mother to the son, the son took title to the money. The contract to repay contained certain conditions. The obligation survived the death of the son, but survived subject to the conditions therein contained. The following cases we think amply uphold the respondent's contention: *Miller v. Slater*, 154 Wis. 35, 142 N. W. 124; *Bedford v. Chandler*, 81 Vt. 270, 69 Atl. 874, 130

Am. St. 1057, 17 L. R. A. (N. S.) 1239; *Daugherty v. Preuitt,* 113 Okl. 66, 242 Pac. 529.

The case of *Rodemer v. Rettig,* 114 Ky. 634, 71 S. W. 869, seems to uphold appellant's contention. However, the supreme court of Kentucky, in an earlier case of *McGlasson v. McGlasson's Executor,* 21 Ky. Law 1843, 56 S. W. 510, holds to the contrary.

Taking this contract as a whole, we think the obligation, therein incurred, to pay interest for an indefinite period, and to repay the note on certain conditions, was sufficient consideration to support the contract, and the court should not attempt to make a new contract for these parties. We think it is also apparent that the fact that the mother, for more than seven years after the death of her son, forbore any attempt to make collection, indicates clearly an intention and understanding on her part that the obligation would terminate with her death.

Appellant also raises the question that the lower court was in error, in requiring the return of the stock pledged as security, because of the failure of respondent to file a claim against the mother's estate.

This question is raised for the first time in this court. We are committed to the rule that the question that a party has not complied with the nonclaim statute can be raised at any time. *Ward v. Magaha,* 71 Wash. 679, 129 Pac. 395, wherein *Neis v. Farquharson,* 9 Wash. 508, 37 Pac. 697, is expressly overruled.

It does not seem to us that the statute of nonclaim has any application to the facts in this case. The respondent is not seeking to recover anything from the assets of the estate. She is not depleting the estate in any way. The property which was awarded to her did not belong to the estate, and no money judgment of any character was sought. Respondent is simply

defending an action brought by the estate to recover money from her as executrix.

The general rule is that the *cestui que trust*, for whom the defendant was in his lifetime a trustee, does not have to make a claim against the estate as long as the particular property he is claiming can be identified, and is not in any way commingled with the assets of the estate, the theory being that he is not depleting the estate, and is not claiming anything which belongs to the estate. He is merely claiming his own property. Woerner American Law of Administration, Vol. 3, § 402. Many authorities approving the rule are quoted with approval in *Davis v. Shepard,* 135 Wash. 124, 237 Pac. 21.

It certainly cannot be the rule that the executor of an estate, suing on a promissory note which has collateral attached to it by way of security, can, on a successful defense being interposed, refuse to deliver up the collateral because no claim has been made against the estate. The action in this instance having been initiated by the administrator of the estate of Harriet Westerman, deceased, respondent was entitled to claim ownership of the shares of stock which, it is admitted, the estate held only as collateral.

Judgment affirmed.

FULLERTON, C. J., PARKER, and MAIN, JJ., concur.