[No. 27558. *En Banc.* January 30, 1940.]

*In the Matter of the Estate of* ALVIN M. LEWIS, *Deceased.*

THOMAS C. BARTO *et al., Respondents,* v. WILL J. LEWIS, *Individually and as Executor, Appellant.*[1]

[1]*Reported in 93 P. (2d) 654.*

*Dillon & Carney,* for appellant.

*Hyland, Elvidge & Alvord, Monroe Watt,* and *Lloyd R. Savage,* for respondents.

*Charles R. Riddell, amicus curiae.*

STEINERT, J.—In the course of a probate proceeding, creditors of the estate filed a petition to vacate an order which had authorized the satisfaction of a mortgage previously held by the decedent. Upon a hearing by the court, a decree was entered granting the petition and directing the reinstatement of the mortgage as an asset of the estate. The executor, who was also the mortgagor, has appealed.

In April, 1935, Alvin M. Lewis, now deceased, and Leona K. Lewis, his wife, were the owners of a tract of land which was encumbered by a mortgage in the sum of $650, payable one-half on February 11, 1936, and the balance on February 11, 1937. Alvin M. Lewis was the father, and Leona K. Lewis was the step-mother, of Will J. Lewis, the appellant herein.

On April 26, 1935, Alvin M. Lewis and wife, as first parties, entered into a written contract with appellant and Eleanor K. Lewis, his wife, as second parties, by the terms of which the first parties agreed to sell and convey by warranty deed, and the second parties agreed to purchase, the real estate above referred to, together with the personal property located thereon, for the sum of $2,250. It was agreed that the second parties should pay $650 of the purchase price by the assumption and seasonable discharge of the outstand-

ing mortgage, and $1,600 by the execution and delivery to Alvin M. Lewis of the second parties' note, together with a second mortgage on the same property, payable in installments of twenty dollars, inclusive of interest, per month beginning February 11, 1937.

The following provision of the contract is the source of this controversy:

"In consideration of the premises, ALVIN M. LEWIS agrees that if, at the time of his death, there remains any sum due and owing on the note and mortgage executed by his son aforementioned, that in that event said note and mortgage shall be declared null and void and that he will provide for such cancellation in his Will."

The contract was signed and acknowledged by all parties.

Pursuant to the agreement, Alvin M. Lewis and wife executed and delivered to Will J. Lewis and wife a warranty deed of the land and personal property. The deed was duly recorded. Contemporaneously with the execution of the deed, Will J. Lewis and wife executed and delivered to Alvin M. Lewis their promissory note in the sum of $1,600, payable as agreed, and their mortgage on the same property as security for the obligation. The note contained the following provision:

"This note and mortgage is subject to a collateral agreement executed by the mortgagee, Alvin M. Lewis, wherein he has agreed that should he die prior to the payment of this note that said note and mortgage shall be declared null and void and that he will execute a will so providing."

The mortgage stipulated that:

"Should any balance be due at the time of the death of the mortgagee, ALVIN M. LEWIS, this mortgage to be null and void."

The mortgage was recorded contemporaneously with the deed above mentioned.

April 30, 1935, Alvin M. Lewis executed his last will and testament, wherein appellant was named as one of the executors. The will contained the following provision:

"If, at the time of my death, there is any sum due from my son, WILL J. LEWIS, by virtue of that certain mortgage and note in the amount of One Thousand Six Hundred ($1,600.00) Dollars executed by him on the 26th day of April, 1935, I hereby direct my executors to cancel said note and satisfy of record the mortgage given to secure the same, to-wit, a mortgage on: [property described].

"The reason for this provision is that for valuable consideration, I have heretofore agreed with my son that if any balance remained due on said note and mortgage at the time of my death that my death should terminate and cancel said note and mortgage."

Alvin M. Lewis died April 10, 1938, and shortly thereafter his will was admitted to probate. On June 29, 1938, appellant, as sole executor, filed a petition upon which an *ex parte* order was entered directing that the mortgage indebtedness of the son be excluded as an asset of the estate and instructing the executor forthwith to execute to himself as an individual a satisfaction of the mortgage. Pursuant to such order, a satisfaction was executed and duly filed for record. On July 19, 1938, the creditor's petition to vacate the order was filed. A second creditor intervened and was permitted to join in the petition.

It is asserted in appellant's brief, and is not disputed by respondents, that the mortgage here in question was placed of record before any of the claims of creditors came into existence. Furthermore, the court did not find, nor do the respondents now contend, that, in making the agreement with his father, appellant committed any fraud upon the creditors.

The sole question before us is whether the transaction evidenced by the foregoing instruments gave rise to a valid and enforceable contract, or whether it was merely an attempted testamentary gift of the obligation embodied in the note and mortgage. The trial court concluded that the transaction was of the latter type and, therefore, subject to the rights of creditors.

It is apparent that the clause by which appellant was relieved of the remainder of his obligation upon the death of his father was part of a contract and, if it be considered an enforceable provision thereof, satisfies his indebtedness under the note and mortgage.

■ There are but few cases which deal directly with facts similar to those under consideration, but those that do are unanimous to the effect that such transactions constitute contracts and not attempted testamentary dispositions of property. One of such cases is *Compton v. Westerman,* 150 Wash. 391, 273 Pac. 524.

In that case, a mother and her son entered into a written agreement evidencing a loan of seven thousand dollars from the mother to the son, and the deposit by the son with the mother of a stock certificate as security for the loan; repayment of the loan was to be made approximately fifteen months later, with interest at five per cent per annum. The agreement contained a provision to the effect that, if the mother died before the entire loan was repaid, then the son should be relieved from all further liability for repayment, and the stock certificate should thereupon immediately be returned to him. The son died some time after the note had matured, and the mother filed a claim against the son's estate. Nothing further, however, was done by the mother with reference to the claim. Eight years later, the mother died, and subse-

quently, her administrator brought an action for repayment of the loan evidenced by the agreement. The contention of the administrator was that the provision in the agreement for the termination of the obligation was invalid (1) because it was an attempted gift which was not completed by absolute, unconditional delivery so as to make it a gift *inter vivos*, and (2) because the agreement was an attempt to make a testamentary disposition of property in a manner other than as provided by the statute.

After reviewing the authorities most nearly in point, this court rejected the contention that the transaction amounted to an attempted testamentary disposition of the property, and, instead, gave effect to the contract, holding that, while the obligation survived the death of the son, such survival was subject to the conditions contained in the agreement. The court further held that the obligation to pay interest for an indefinite period and repay the note on certain conditions was sufficient consideration to support the contract.

One of the authorities cited in the *Compton* case was that of *Bedford's Executor v. Chandler*, 81 Vt. 270, 69 Atl. 874, 130 Am. St. 1057, 17 L. R. A. (N. S.) 1239. In that case, suit was brought by the executor of an estate upon a note in which the maker had promised to pay the decedent "and to no other person, executor, trustee, or assignee," a certain sum, with interest annually. In construing that provision of the note, the court said:

"We think the restriction embodied in the writing cannot be regarded as a mere limitation upon the payee's right of transfer. It was evidently intended that the promise should be available to the payee in her lifetime, and become unenforceable at her death."

The plaintiff in that case further contended that the restriction in the note was void as an attempt to dis-

pose of property after death without the required formalities or, if the transaction should be viewed as a gift *inter vivos,* that it lacked the requisites of present giving and complete delivery. Answering those contentions, the court further said:

"It is enough to say as regards these claims that all the gift that the decedent intended was irrevocably made and completely delivered when the consideration of the note was made over in exchange for a promise of payment thus limited. The gift consisted of so much of the amount represented by the note as the payee should not collect in her lifetime. The title to the gift passed to the defendant, subject to a right of defeasance in the donor, and the right of defeasance terminated at the donor's death. The reservation of this right did not make the gift invalid, and the limitation of the right was such that nothing was left in the donor to pass at her death."

The case of *Twyman v. Wood,* 61 Ohio App. 229, 22 N. E. (2d) 495, decided June 20, 1938, is strikingly similar to the case at bar. In that case, a written instrument, signed by the decedent alone, provided for the sale by the decedent of a farm, together with certain livestock and equipment thereon, for a total purchase price of $3,800, of which two hundred dollars was to be paid down by the purchasers, and for the unpaid portion the latter were to execute a series of notes payable annually without interest. To secure the notes, the purchasers executed to the decedent a mortgage on the farm. The agreement between the parties contained the provision that "in case of my [the signer's] death at any time the debt is paid in full and they are not to pay any more." In an action brought upon the last note to become due and to foreclose the mortgage, the plaintiff, decedent's assignee, contended, and the trial court held, that the provision above quoted amounted to an attempted testamentary disposition of the unpaid balance and was, therefore, invalid because

it was not executed with the necessary formalities of a will. The appellate court reversed the judgment and, in construing that provision, said:

"The contract can not be given the construction asserted by plaintiff and adopted by the trial court. It can not be construed as a testamentary gift or disposition of the balance due at Mrs. Twyman's death. It contains all the elements of a valid contract given for a valuable consideration passing between the parties . . . The parties had a legal right to enter into this kind of a contract if they so desired. . . . This was not an attempted testamentary disposition of property. It was not a gift but was one of the terms of the sale fixing the amount of the consideration. What element of a valid and binding contract is wanting? The facts in this case are not to be confused with the facts in some of the authorities cited by counsel for the plaintiff. In those cases there was an attempted gift while in this case there is no attempted gift at all but a mere agreement upon a proper consideration to forgive the payment of part of the purchase price of the property at some future time."

The most recent case that has come to our attention upon the subject is *Bergman v. Ornbaun,* 92 P. (2d) (Cal. App.) 654, decided July 17, 1939. In that case, it appears that an elderly bachelor conveyed a tract of land by deed and, in consideration thereof, took from the purchaser his promissory note for five thousand dollars, payable in semi-annual installments of two hundred dollars each and secured by a deed of trust on the property. In the body of the note there was a provision that:

" 'This note shall not be negotiable by reason of an agreement between the maker and payee hereof that in the event of the death of the payee before this note is fully paid all further indebtedness shall be canceled.' "

Following the maker's signature was a provision signed by the payee that,

" 'In the event of my death before this note has been fully paid, all payments which would otherwise be made hereunder are hereby canceled, and upon payment of all sums due hereunder prior to the date of my death this note shall be fully paid, satisfied and discharged.' "

The payee named in the note died about ten months after its execution. At the time of his death, all indebtedness due on the note had been paid. The maker thereafter brought suit against the executrix of the estate and the heirs at law of the decedent to cancel the note and deed of trust, on the ground that the obligation had been satisfied. The trial court denied plaintiff relief, on the theory that the transaction was either a gift *inter vivos* or else an attempted testamentary disposition.

In reversing the judgment, the appellate court said:

"The transaction, as we view the evidence, is neither a gift inter vivos nor an attempted testamentary disposition. It is very plain the consideration plaintiff promised to pay for this property was $200 semiannually during the life of Irish [the decedent], and not exceeding in all $5,000. The fact that Irish was an aged man might have been a reason why plaintiff agreed to take the property on this condition. If Irish desired to sell his property for this consideration, and plaintiff agreed to purchase same on such terms, such agreement was not against public policy, and we do not see why it should not be carried out."

If these cases be taken as authoritative and their reasoning be applied to the facts of the case now before us, it would necessarily compel a holding that the transaction in question was a valid and enforceable contract and not an attempted testamentary disposition of appellant's obligation on the note and mortgage.

Respondents, however, insisting upon a contrary result, rely upon two cases from this jurisdiction: *In re Murphy's Estate*, 193 Wash. 400, 75 P. (2d) 916; *Decker*

*v. Fowler,* 199 Wash. 549, 92 P. (2d) 254. We do not believe that either of those cases is controlling here.

In the *Murphy* case, the facts, briefly stated, were these: Murphy executed an instrument by which he agreed to lease to the Y. M. C. A. a tract of land to be used as a boys' camp. The lessee agreed to keep the premises in good condition, make repairs, rebuild damaged, destroyed, or obsolete buildings, construct certain improvements, and pay various taxes and charges; if the lessee should fail to do any of these things, or if it should cease to be a going concern, the lease was to terminate in the discretion of the lessor. It was further covenanted that, if the lessee should fully perform the terms of the lease and if the lease were in good standing at the time of the lessor's death, then the lands and premises should become the property of the lessee, and the executors or administrators of the lessor were authorized and directed to execute all conveyances necessary to vest title in the lessee. The lessor died, and the lessee brought an action to compel the executor to execute a conveyance of the land to it. This court, in approaching the problem presented for solution, said:

"Where the provision of an instrument, in the form of a deed or contract, postponing its taking effect until after the death of the grantor, is construed as passing a present interest in the grantee, the instrument is a deed or a contract. Where, however, the provision postponing its taking effect until after the death of the grantor is construed as passing an interest not to take effect until the death of the grantor or maker of the instrument, the instrument is testamentary in character, notwithstanding that, in form, it may be a deed or contract. That is to say, the rule is that an instrument containing a provision postponing its taking effect until after the maker's death, which passes an interest that is revocable and ambulatory, is testamentary in character."

The decision in that case was rested entirely upon the question whether a "present interest" in the land passed by the instrument to the lessee. Upon that question, the court held that the contract disclosed no intention on the part of the lessor to transfer to the lessee any present interest other than the leasehold interest, which terminated at the lessor's death. Parenthetically, it may be observed that the opinion did not hold that a *contract to devise* was, of itself, a testamentary disposition; that question did not enter into the theory upon which the case was decided.

We do not believe that the legal relations of the parties in the *Murphy* case approach in similarity those disclosed by the facts in the case at bar; nor do we think that the rule declared in that case militates against appellant's contention here; for, as we view it, a present interest, or quantum of interest, passed to the appellant by virtue of the contract at the time of its execution.

It is significant that the opinion in the *Murphy* case does not mention the *Compton* case, *supra*, at all. Certainly, it did not expressly overrule the earlier case, and the factual distinction between the two dispels any conclusion that it was intended to overrule that case *sub silentio*.

The case of *Decker v. Fowler*, 199 Wash. 549, 92 P. (2d) 254, relied on by respondents, has no application whatever to the case at hand. In that case, the only question considered was whether decedent, by taking out in his lifetime certain government bonds in which another person was made a conditional beneficiary, had made a valid gift of the proceeds of the bonds to such beneficiary. It was held that he had not, because there had been no delivery sufficient to divest the donor of his present control and dominion over the bonds. There was not involved in that case any ques-

tion of a contract as between the purchaser of the bonds and the beneficiary named therein.

The difference in effect between a contractual obligation and a testamentary disposition is that the former creates a present, enforceable, and binding right over which the promisor has no control without the consent of the promisee, while the latter operates prospectively and not *in praesenti,* and is wholly ambulatory and subject to change at the testator's wish, until his death. Atkinson on Wills, 151; 1 Page on Wills (2d ed.), 120, § 70; 28 R. C. L. 62, § 6.

In this case, it is clear from the initial agreement and all the subsequent instruments that the dominant purpose of the decedent was to enter into a contract for the sale of his property on definitely expressed terms. There was consideration for the contract, and mutual performance by the parties. We see no reason why persons should not enter into such an undertaking, nor any reason why the court should interfere with their expressed intention, in the absence of any fraud.

The provision in the will requiring the executor to satisfy the mortgage on the death of the decedent, and the executor's act in carrying out that mandate, were accomplished in accordance with the terms of the contract. Had the note and mortgage been fully paid before death, satisfaction of record could have been compelled by the party entitled thereto under the contract. Since the decedent's death marked the termination of the obligation under the contract, the appellant was entitled to the same relief.

The judgment is reversed, with direction to the trial court to dismiss the petition.

MAIN, BEALS, MILLARD, GERAGHTY, ROBINSON, SIMPSON, and JEFFERS, JJ., concur.

BLAKE, C. J. (dissenting)—Viewing the transaction as a whole, I am unable to discern any consideration passing from the son to his father which justifies the holding that the former may take at the latter's death the entire estate (the mortgage) free from the claims of creditors.

I dissent.

