[No. 111-40661-1.    Division One.    March 23, 1970.]
Panel 2

*In the Matter of the Estate of* DEWEY T. VERBEEK, SR.,
*Deceased.*

A. J. VERBEEK, *Appellant,* v. IRENE L. VERBEEK, *as Administratrix, Respondent.*

*Bell, Ingram, Smith, Johnson & Level, Lewis A. Bell,* and *Edward E. Level,* for appellant.

*Benson & Stege* and *George Stege III,* for respondent.

HOROWITZ, A. C. J.—Decedent, Dewey T. Verbeek, Sr., died intestate on September 20, 1967. His surviving widow, Irene L. Verbeek, qualified as administratrix of his estate. In that capacity she filed an inventory and appraisement which lists a real estate contract on certain described property naming Dewey T. Verbeek, Sr. and Irene Verbeek as sellers, and Philip R. Verbeek and Carol C. Verbeek as purchasers. The description is followed by the insertion of a figure of $13,000 under a heading reading "Appraised Value." However, no appraisement by a court appointed appraiser, pursuant to RCW 11.44, has yet been had nor has notice to creditors yet been published. RCW 11.40.010.

On February 15, 1968, A. J. Verbeek, decedent's son by a prior marriage, filed an objection to the inventory pursuant to RCW 11.44.035 claiming the inventory to be erroneous

in that it indicates there is a balance due and owing and unpaid by the purchasers of the real estate contract, PHILIP R. VERBEEK and CAROL C. VERBEEK, of the sum of THIRTEEN THOUSAND ($13,000.00) DOLLARS, wherein in truth and fact said real estate contract is null and void and of no effect and said real property should have been inventoried as belonging entirely to the estate of said decedent without obligations by contract or otherwise to

convey to PHILIP R. VERBEEK and CAROL C. VERBEEK, and without any contractual rights to receive said conveyance vested in them.

The objector then prayed that the inventory be reformed

> to disclose the real property . . . as vested in said decedent without contractual obligation to convey the same for any price whatsoever, and that said real property be appraised for its true value without reference to the contractual rights of the aforesaid purchases . . .[1]

The trial court entered findings, conclusions and order dated July 30, 1968, upholding the validity of the real estate contract inventoried; adjudging the property described in the contract to be community property of the decedent and his surviving widow; and adjudging the balance due on the real estate contract at the time of the death to be in the sum of $12,200 and at the time of trial, $11,800. Appellant objector appealed.

Dewey T. Verbeek, Sr. and Irene Verbeek lived together as husband and wife from 1936 until the decedent's death in 1967, but were not married until December 22, 1953. The real property described in the real estate contract listed in the inventory was acquired by the decedent in his own name on November 21, 1944, in fulfillment of a real estate contract entered into by the decedent on September 15,

---

[1]There is no cross-appeal assigning error directed to the trial court's treating the appellant heir as a "party in interest" (RCW 11.44.035) entitled to raise the objections here made at this stage of the proceedings. At the time of the hearing, the time for the filing of creditors' claims had not expired (RCW 11.40.010) and appraisement had not been had (RCW 11.44). It thus could not be known whether the estate was solvent or insolvent so as to enable a determination to be made whether appellant heir would benefit from his objections. Furthermore, neither the purchasers nor Irene Verbeek in her individual capacity were made parties to the record (although each testified below) and no administrator ad litem was appointed to represent the estate's interest because of the potential conflict of interest between Irene Verbeek, individually, and Irene Verbeek in her capacity as administratrix. Until presented on proper assignments of error, we do not determine to what extent, if any, persons other than the parties to the record here are bound by our rulings on this appeal.

1937. In 1945, 1951 and 1962, the decedent and Irene Verbeek joined in mortgaging the real property. All mortgage indebtedness, however, has been apparently repaid.

On January 15, 1965, decedent and Irene, his wife, owned no real property other than real property above referred to and here involved. Their home was located on this property. On January 15, 1965, the decedent and his wife Irene executed and acknowledged an agreement as to status of community property after death of one of the spouses under the provisions of which the community property of the parties upon the death of the first to die would vest in the survivor. RCW 26.16.120. The agreement was recorded after decedent's death.

On May 25, 1966, Dewey T. Verbeek, Sr. and his wife, Irene, executed, acknowledged and delivered the contract for the sale of real estate here involved to their son, Philip R. Verbeek and his wife, Carol C. Verbeek. The real estate contract was on a printed real estate form commonly distributed by title insurance companies. The real estate sales tax in the amount of $250 was paid to the Snohomish County Treasurer on May 26, 1966, although the contract was not filed for record until after the decedent's death on September 20, 1967.

Under the terms of the real estate contract the sellers agreed to sell and the purchasers agreed to purchase from the sellers the real estate described free of all encumbrances except that the following provision was typed in: "That the sellers during their life time or the life time of either shall have the right to occupy said premises and the home thereon, with the right to use said premises for their own personal benefit or gain." The typewritten provisions also provided that payment was to be made on the following terms and conditions:

The purchase price is Twenty-Five Thousand, and No/100 ($25,000.00) dollars, of which Six Thousand and No/100 ($6,000.00) dollars has been paid, the receipt whereof is hereby acknowledged, and the purchaser agrees to pay the balance of said purchase price as follows: The sum of $50.00 per month shall be payable on

the —— day of each month as long as both or either of the sellers lives, regardless of whether there is a balance due on the contract. That said balance shall not bear interest and in case of the death of both parties, if there is any balance under the contract, the same is to be discharged and remitted and all obligations of purchasers hereunder, financially or otherwise, shall be fully satisfied, and there shall be no further payments due or payable on any balance by purchasers. The monthly payments herein provided shall continue during the life time of either of the sellers.

The sellers hereby declare their intent, during the life of this contract to make a gift of $3,000.00 to each of the purchasers on the 1st. day of each year, beginning with January 1st. 1967, to be credited only against any balance which might still be due on the contract.

The sellers agreed in the printed provisions to execute and deliver to the purchasers a warranty deed "upon receiving full payment of the purchase price and interest in the manner above specified . . ." The sellers were required to deliver to the purchasers within 10 days a title insurance policy in the usual form. The record does not show whether such a title insurance policy was in fact delivered.

With reference to the purchasers' obligations, the printed provisions of the contract provided that the purchasers should pay before delinquency all taxes and assessments, to keep the buildings unceasingly insured against fire, loss or damage, to deliver to the sellers insurance policies, to keep the buildings and other improvements in good repair and not to use the premises for any illegal purpose. The printed provisions further provided that the purchasers should have possession of the real estate and be entitled to retain possession so long as the purchasers were not in default, and that upon default, forfeiture might be declared. With reference to the initial $6,000 payment receipted for by the sellers, the court found that the down payment had been made with a $6,000 gift which the deceased made and delivered to the purchasers in 1966 upon execution and delivery of the contract and that the deceased participated in and

delivered a gift of $6,000 to the purchasers on January 1, 1967.

Following the execution of the real estate contract, the sellers remained in physical possession of the real property. However, the purchasers paid real estate taxes thereon in 1967 and 1968; made repairs to the fences; paid for and installed gravel; made installment payments called for in the contract at the rate of $50 per month for 16 months; and the purchasers have continued to pay $50 per month to Irene Verbeek through May, 1968.

Appellant contends (1) that the real estate contract is void because it is a testamentary instrument not executed in accordance with the formalities required of a will (RCW 11.12.020); (2) that the real estate described in the real estate contract is the separate property of the decedent and should be so inventoried; and (3) that the true balance owing under the contract as found by the court is too low.

We turn then to a consideration of the testamentary character of the real estate contract involved. A testamentary instrument, whether or not purporting to be a will, has three essential, although somewhat overlapping, characteristics: (1) It must be executed with testamentary intent; (2) it is revocable or ambulatory during the testator's lifetime, and (3) it operates upon property existing at the date of death and is effective at his death. 1 W. Bowe & D. Parker, Page on Wills § 1.2 (1960); *Young v. O'Donnell,* 129 Wash. 219, 224 P. 682 (1924). In determining whether the testamentary intent exists with respect to a particular instrument in a case when the maker's intention cannot be ascertained from the language used in that instrument, the name given to the instrument or to the legal relationship created, whether it be "deed", "contract", "lease", or other relationship, is helpful but not controlling. One must look to the provisions of the instrument in order to determine whether the instrument is, in fact, testamentary. Resort may be had to so-called indicia of intention. Such indicia, particularly pertinent here, include the name of the writing given by the parties to the instrument, the form of the

instrument, the manner of execution of the instrument, the acknowledgment of the instrument, the recording of the instrument, the way in which the instrument has been treated by the parties, the fact that the powers of revocation of sale or modification are not reserved in the seller, the fact that the conveyance is not conditional upon the purchaser surviving the seller, the fact that there is no prohibition against recording the instrument until the seller's death, the fact that the possession of the instrument is not required to be retained by the seller. These indicia of intention tend to show the nontestamentary character of the instrument and the intention to pass a present interest. No one factor is necessarily controlling. Annot., 31 A.L.R.2d 532 at 543 (1953). The indicia of intent of paramount importance in determining whether the instrument is testamentary is the fact that if the instrument creates an interest in praesenti rather than an instrument to take effect at the death of the testator, the instrument is nontestamentary. Deeds and contracts to sell real estate present common problems in an effort to ascertain whether the instrument is testamentary in character. Annot., 31 A.L.R.2d 532 at 534 (1953); see 11 A.L.R. 23 (1921). Thus, if a deed passes a present interest merely postponing enjoyment thereof to the date of death, it is not a testamentary instrument. 31 A.L.R.2d 532 at 538 (1953). We see no reason for not extending this doctrine to a contract, lease or other instrument. See *In re Estate of Murphy,* 193 Wash. 400, 75 P.2d 916 (1938), *overruling* 191 Wash. 180, 71 P.2d 6 (1937); *cf, Young v. O'Donnell, supra.*

The difference between an interest in praesenti and testamentary interest is stated as follows in 1 W. Bowe & D. Parker, Page on Wills § 6.1 (1960):

An inter vivos transfer or transaction requires that some interest or control, however small, be surrendered and that some right in another party come into being at the time of the transaction. If a purported inter vivos conveyance has no effect whatsoever until death and involves absolutely no surrender or divestiture of control, use, power or interest in the property involved, and cre-

ates no present duty or liability upon the maker and no rights in others, there exists no reason to consider it as inter vivos for it squarely meets the very definition of testamentary disposition and ought to come under the requirements of the statute of wills. It is a very common practice for courts to strike down illusory inter vivos transactions as void on the ground that they accomplish nothing until death, are testamentary in nature, and therefore should be denied effect for want of execution according to testamentary formalities.

In Annot. 31 A.L.R.2d 532 at 538 (1953) it is stated:

One has a present interest in property when he presently owns or holds some property rights therein, regardless of the time at which the estate comes into enjoyment. The principal distinction between a deed and a will is that a deed conveys a present interest, takes effect upon delivery, and is irrevocable after delivery, whereas a will does not divest the maker of any interest, and does not operate until the maker's death, until which time it is ambulatory and revocable.

We turn then to an examination of the provisions of the real estate contract here involved. Preliminarily, it should be recalled that in *Ashford v. Reese,* 132 Wash. 649, 233 P. 29 (1925) it was held that a seller in an executory contract for the sale of real estate, the contract containing a forfeiture clause, "conveys no title or interest, either legal or equitable, to the vendee . . ." Numerous subsequent explanatory cases, however, have made it plain that the purchaser does have existing contract rights and does have rights in respect to the land resulting from the contract. Many such cases are set out in the footnote below.[2] In fact, the Supreme Court has held in *Windust v. Department of Labor & Indus.,* 52 Wn.2d 33, 323 P.2d 241 (1958) that

---

[2]*Dysart v. Colonial Fire Underwriters,* 142 Wash. 601, 254 P. 240 (1927); *Oliver v. McEachran,* 149 Wash. 433, 271 P. 93 (1928); *State ex rel. Oatey Orchard Co. v. Superior Court,* 154 Wash. 10, 280 P. 350 (1929); *Vandin v. McCleary Timber Co.,* 157 Wash. 635, 289 P. 1016 (1930); *Hubbard v. Grandquist,* 191 Wash. 442, 71 P.2d 410 (1937); *Cady v. Kerr,* 11 Wn.2d 1, 118 P.2d 182 137 A.L.R. 713 (1941); *In re Horse Heaven Irr. Dist.,* 11 Wn.2d 218, 118 P.2d 972 (1941); *Turpen v. Johnson,* 26 Wn.2d 716, 175 P.2d 495 (1946).

The cumulative effect of many slight deviations is demonstrated by the rule of *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29, which, in 1925, held that a vendee under an executory contract to purchase real property, acquired no title or interest, legal or equitable, in it. It has never been overruled, yet, in a series of subsequent cases, it has been whittled away until nothing remains.

Here, the instrument is expressly characterized as "a real estate contract" in the form commonly distributed by title insurance companies and used as a form appropriate to the creation of a vendor-vendee relationship. The contract purports to create certain obligations including the obligation to pay purchase price installments, to repair, pay taxes and to keep the premises insured. The contract purports to give the purchasers a right of immediate possession, subject to a retained or reserved right of occupancy on the part of the sellers. In effect, the contract provides for the sale of a vested remainder interest in the real property subject to a life tenancy in favor of the sellers. Annot. 11 A.L.R. 23 to 106 (1921). See 1 W. Bowe & D. Parker, Page on Wills § 6.10 (1960). The sellers have reserved no power to revoke or sell. 1 W. Bowe & D. Parker, Page on Wills § 6.13 (1960). The interest of the purchasers is immediately assignable, exchangeable, mortgageable and lienable. 1 W. Bowe & D. Parker, Page on Wills § 6.12 (1960). Neither is there any provision that the contract shall not take effect until the death of the sellers nor any provision for revestment of title in the sellers in the event of death of the purchasers. 1 W. Bowe & D. Parker, Page on Wills § 6.5 (1960); *Young v. O'Donnell, supra.* The death of the purchasers does not terminate the purchasers' interest. On the contrary, that interest continues and is descendable to their heir or devisee, as the case may be. The real estate contract, therefore, is not ambulatory, but is effective during the lifetime of the parties and does not necessarily postpone the vesting of title until the death of the sellers. Thus, the purchasers are entitled to a warranty deed when the stated purchase price of $25,000 is paid, even though there is a continuing obliga-

tion, should the sellers survive, to pay the sellers, or their survivor, $50 a month so long as either survive. The sellers treated the real estate contract as such by paying $250 real estate sales tax to the Snohomish County Treasurer.

■ There are, however, provisions not found in conventional real estate contracts, namely (1) the payments must continue to be made until the death of both sellers even after the payment of the $25,000 stated purchase price; (2) if both sellers die, the unpaid purchase price is cancelled; (3) the purchase price owing is noninterest bearing; (4) the sellers' stated intention to make a gift of $3,000 a year to each of the purchasers to be applied "against any balance which might still be due on the contract"; and (5) there is in effect a reservation of a life estate in the sellers. It is true that these provisions indicate that the sellers were motivated by a desire to make it as easy as possible for the purchasers (their son and daughter-in-law) to acquire the property. In a sense the contract was a substitute for a will. However, an instrument may be a will substitute and still not be testamentary. 1 W. Bowe & D. Parker, Page on Wills § 6.1 (1960) lists 18 will substitutes, none of which is a testamentary instrument requiring compliance with the execution requirements of a will. A statutory community property agreement (RCW 26.16.120) is a will substitute and if the statute is complied with, a valid nontestamentary instrument. *Bartlett v. Bartlett*, 183 Wash. 278, 48 P.2d 560 (1935). None of the unusual provisions of the contract derogate, however, from the fact that an interest in praesenti is created by the contract. The provision that if both vendors die the unpaid balance of the purchase price is cancelled, does not render the contract a testamentary instrument. *Compton v. Westerman,* 150 Wash. 391, 273 P. 524 (1928). Nor do the provisions disclosing a donative intent operate to make the instrument ambulatory during the life of the sellers so as to make the instrument testamentary.

On the issue of the testamentary character of the real estate contract here involved, appellant particularly relies on *In re Estate of Murphy,* 193 Wash. 400, 75 P.2d 916

(1938) overruling departmental opinion in 191 Wash. 180, 71 P.2d 6 (1937). That case involved a lease with provisions distinguishable from the real estate contract herein involved. The lease term was "for the period of his [Murphy's] natural life and until his death, or until a guardian or trustee for any cause is appointed of his estate." Certain provisions significant on the testamentary character of the Murphy lease are not present in the real estate contract. They include; e.g., (1) the provision prohibiting the title of the lessee to be transferred from the lessee involuntarily or by operation of law; (2) the provision prohibiting the lessee from encumbering the leasehold interest; (3) the provision prohibiting the lessee from contracting any debt for labor or material that might become a lien against the lessor; (4) the provision prohibiting the lessee from contracting or creating any mortgage liens; (5) provisions making it impossible for lessee to perform and obtain a deed to the property prior to the death or described disability of Murphy, the lessor. In effect, the court held that the creation of a leasehold interest was not a sufficient in praesenti interest to preclude the court from treating the lease as in substance a testamentary instrument. In the instant case, as above pointed out and for the reasons stated, the real estate contract did create an interest in praesenti. Thus, the purchasers had a right to obtain title upon paying the stated purchase price of $25,000, a matter within the purchaser's control. In *In re Estate of Murphy, supra,* the lessee lacked the power to obtain title until the death of or disability of the owner lessor. We conclude that the administratrix properly treated the real estate contract as a valid and subsisting agreement and properly listed it in the estate inventory as such.

Appellant next contends that the real property involved is the decedent's separate property having been acquired in decedent's name prior to decedent's marriage to Irene Verbeek in 1953. *Engstrom v. Peterson,* 107 Wash. 523, 182 P. 623 (1919); *Carr v. Bell,* 129 Wash. 413, 225 P. 230 (1924); *Hynes v. Hynes,* 28 Wn.2d 660, 184 P.2d 68 (1947). The

court found, however, that the deceased and Irene Verbeek while living together subsequent to 1936 jointly entered into mortgages on the real property involved on three occasions—two before their marriage on December 22, 1953, and one subsequent thereto; that the deceased and Irene Verbeek, his wife, entered into the statutory community property agreement above referred to (RCW 26.16.120) on January 15, 1965, said agreement being prepared by the decedent's attorney; and that on May 25, 1966, the decedent and Irene Verbeek entered into the real estate contract hereinabove described at length. The court further found "That the defendant [decedent] did not have to have Irene Verbeek join in the sale to Philip R. Verbeek unless he intended or believed the same was community property." In the conclusions of law the court further stated: "That the deceased did by act and deed convert the said property from separate property to community property." The foregoing conclusion is also in the nature of a finding and we may properly consider it as such along with the other findings briefly summarized above. See *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963).

Appellant's assignments of error raise the question as to whether substantial evidence supports the findings of the trial court that the real property involved at the date of the death of the decedent was the community property of the parties.

It is true, of course, that the existence of a lawful marriage is essential to the creation of community property. It is also true that the mere belief of a party to a marriage, without more, that certain real property owned or acquired by him is community property, is not sufficient to support a finding that the property involved is community property. See *State ex rel. Van Moss v. Sailors,* 180 Wash. 269, 39 P.2d 397 (1934); *Merritt v. Newkirk,* 155 Wash. 517, 285 P. 442 (1930). We agree also that mere joinder in a contract, mortgage or deed by husband and wife or by two parties living together prior to marriage is insufficient to convert property into community property.

*Seaton v. Smith,* 186 Wash. 447, 58 P.2d 830 (1936); *Guye v. Guye,* 63 Wash. 340, 115 P. 731 (1911); *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 P. 1088 (1911). We further agree that mere self-serving statements of a spouse are insufficient to change the status of separate property to community property. *In re Estate of Allen,* 54 Wn.2d 616, 343 P.2d 867 (1959); *Berol v. Berol,* 37 Wn.2d 380, 223 P.2d 1055 (1950). It is also true that under the law of this state, the status of real property as distinguished from personal property; *e.g.,* earnings, cannot be changed by mere oral agreement of the spouses. *Leroux v. Knoll,* 28 Wn.2d 964, 184 P.2d 564 (1947); *Rogers v. Joughin,* 152 Wash. 448, 277 P. 988 (1929); *Graves v. Graves,* 48 Wash. 664, 94 P. 481 (1908). The necessity for a writing changing the separate status of real property has been said to arise because of the statute requiring all conveyances of real estate or an interest therein and all contracts creating or evidencing any encumbrance upon real estate to be by deed or written contract. *Graves v. Graves, supra,* (Bal. Code § 4517); *Nichols v. Oppermann,* 6 Wash. 618, 34 P. 162 (1893) (between strangers) (Gen. Stat. § 1422); *Shorett v. Signor,* 58 Wash. 89, 107 P. 1033 (1910) (Rem. & Bal. Code § 8766). Other cases have assumed the necessity of a written agreement or cited earlier case support for that requirement. *Dobbins v. Dexter Horton & Co., supra; Katterhagen v. Meister,* 75 Wash. 112, 134 P. 673 (1913); see *Churchill v. Stephenson,* 14 Wash. 620, 45 P. 28 (1896). The earlier statutes above cited are now superseded and embraced by RCW 64.04.010; *cf.,* RCW 26.16.050. However, under that statute and its predecessors it was and is well settled that deeds and written contracts of sale must contain an adequate legal description of the real estate upon which it operates. *Martinson v. Cruikshank,* 3 Wn.2d 565, 101 P.2d 604 (1940); *Fosburgh v. Sando,* 24 Wn.2d 586, 166 P.2d 850 (1946); *Geoghegan v. Dever,* 30 Wn.2d 877, 194 P.2d 397 (1948); *Martin v. Seigel,* 35 Wn.2d 223 212 P.2d 107 (1949); *Bingham v. Sherfey,* 38 Wn.2d 886, 234 P.2d 489 (1951); *Herrmann v. Hodin,* 58 Wn.2d 441, 364 P.2d 21

(1961). An inadequate legal description is said to be violative of the statute of frauds. *Bigelow v. Mood,* 56 Wn.2d 340, 353 P.2d 429 (1960). Even our general statute of frauds (RCW 19.36.010(5)) requiring an agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or commission requires that the agreement contain an adequate legal description. *Heim v. Faulstich,* 70 Wn.2d 688, 424 P.2d 1012 (1967).

Yet, notwithstanding the legal description requirements of RCW 64.04.010 and its predecessors, no such requirement has been held necessary in an agreement between husband and wife changing the status of separate to community property, at least when the questions arise as between the spouses and persons in privity with them. Thus, in *Volz v. Zang,* 113 Wash. 378, 194 P. 409 (1920) the court held that a written agreement between husband and wife that each parcel of land wherever situated, both presently owned or thereafter to be acquired, should be deemed community property was a valid contract and operated to convert separate real property into community property. No legal description was contained in the written agreement concerning the real property to which the agreement had application. It is true that the agreement in *Volz v. Zang, supra,* contained a recital that it should operate as a conveyance. However, the agreement was not a conveyance in the conventional sense since there was no legal description of the real property purportedly conveyed as required in a deed. It was not even contended in the briefs that a legal description was necessary. *Volz v. Zang, supra,* has been cited with approval many times by the Supreme Court. In no subsequent case has the Supreme Court ever suggested that an adequate legal description of real estate intended to be covered by the agreement, was necessary to satisfy the requirements of RCW 64.04.010 and its predecessors. One must conclude that the requirement of a writing is not a statutory requirement but a court-created requirement adapting itself to felt requirements in aid of the policy favoring freedom of contract between spouses, the desire to

carry out their mutual intentions adequately evidenced, and in the case of the conversion of separate into community property, in aid of the policy favoring community property. See *Volz v. Zang, supra; In re Estate of Salvini,* 65 Wn.2d 442, 397 P.2d 811 (1964). What is required is that the mutual intention of the husband and wife to convert separate into community property should be evidenced by a writing. Mutual written promises as in *Volz v. Zang, supra,* will suffice, even though unaccompanied by legal description.

■ The husband and wife here executed a statutory community property agreement pursuant to the provisions of RCW 26.16.120. That statute by its terms is applicable only to community property. By that agreement the spouses agreed that all community property owned at the date of the execution of the agreement, together with all other community property, real or personal, that might thereafter be acquired, should vest in the survivor of the parties upon the death of the first to die. In addition there was the following recital:

> That whereas the said parties hereto are owners of certain community property, and are desirous that said property, together with all other community property, either real or personal, that may hereafter be acquired, shall pass, without delay or expense, upon the death of either, to the survivor.

The agreement does not identify the "certain community property" to which it refers and that property must be identified by parol evidence.[3] In *Volz v. Zang, supra,* the pleadings admitted the ownership of the property that was the subject of agreement. It is one thing to enforce a parol agreement to convert separate into community property and a different thing to resort to parol evidence solely for the purpose of identifying the property, the promise to convert which is in writing. *Cf.,* 55 Am. Jur. *Vendor and*

---

[3] As to after-acquired property unknown to the parties at the date of the agreement, parol evidence of identification would, of course, be necessary.

*Purchaser* § 122 (1946); 49 Am. Jur. *Statute of Frauds* §§ 349, 352 (1943) dealing with statutory provisions. We see no difference in substance between a joint acknowledgment by husband and wife and by way of recital which is an admission against interest of the decedent husband that real property is community property and a written promise by husband and wife that real property should be deemed or treated as community property. Were we to distinguish between the two, there being no statute or construction thereof requiring us so to do, we would be sacrificing substance for form on the question of identification. See G. McKay, Law of Community Property §§ 235-240 (2d ed. 1925). Furthermore, the adoption of the rule we here apply is within the reason and policy of the *Volz v. Zang* court-created doctrine.

The evidence shows that the husband and wife consulted their long-time attorney and discussed with him the distinction between separate and community property, and the disposition of the real property here involved, and then occupied by them, upon the death of either. The real property was the only real property they then had. Acting upon their attorney's advice, they executed the statutory community property agreement prepared by him for the purpose of giving effect to their intentions. Because RCW 26.16.120 is applicable only to community property it is a reasonable inference from the evidence that the husband and wife mutually intended that the statutory community property agreement should be applicable to their home property then under discussion and that the property should be left to the survivor. No will was drawn up or executed. Prior to the execution of that agreement in 1962 the wife had joined with her husband in mortgaging the property. Subsequent to that agreement on May 25, 1966, the husband and wife both executed and acknowledged a written contract for the sale of the real estate specifically describing it. Such a joinder by the wife was essential if the property were community property, whereas, it would have been unnecessary if the property were separate prop-

erty (RCW 26.16.040; 26.16.020; 26.16.010). Any uncertainty in the description of the real property that may have existed at the time of the execution of the statutory community property agreement was removed by the legal description in the later contract of sale. *Cf.,* 49 Am. Jur. *Statute of Frauds* §§ 349, 352 dealing with statute of frauds. At the same time, the statutory community property agreement evidenced by the recital that it was applicable to "certain community property" was mutually observed. See *Kolmorgan v. Schaller,* 51 Wn.2d 94, 316 P.2d 111, 67 A.L.R.2d 704 (1957) dealing with postmarital earnings. In our opinion there is substantial evidence and reasonable inferences therefrom to support the express and implied findings of the court that the real property here involved at the date of the death of the decedent was the community property of the parties.

Appellant finally contends that the unpaid balance of the real estate contract found to be owing was too low because certain claimed gifts in reduction of the balance owing had not been made. Having found that the statutory community property agreement executed by the decedent and Irene Verbeek was a valid instrument applicable to the real property involved as community property, it follows that the only party entitled to the purchase price upon the death of the decedent is Irene Verbeek. RCW 26.16.120. If the amount found owing is less than the true amount owing, only she will be prejudiced and appellant has no interest in that matter. Appellant's rights are no greater than that of the decedent since appellant as the decedent's heir is in privity with the decedent. See *Volz v. Zang, supra,* and *Aguilera v. Corkill,* 201 Kan. 33, 439 P.2d 93 (1968). Appellant is not a creditor objecting in that capacity.

Appellant's contention concerning the correctness of the balance found owing raises the question as to whether the trial court in adjudging the amount owing was dealing with the stated purchase price of $25,000 or dealing also with the provision that the survivor would be entitled to $50 per month for life. No evidence was taken as to the present

value of the monthly payments and the calculations made by the parties had reference to the $25,000 stated purchase price. Were we to affirm the judgment on the assumption that the court intended to adjudge the total amount owing we would be depriving Irene Verbeek of her right to receive the $50 per month payments after the stated purchase price was paid. We do not think that a fair construction of what the trial court did requires us to so find. We construe the trial court's finding to deal only with the unpaid balance owing on the stated purchase price.

The judgment is affirmed.

JAMES, C. J., and WILLIAMS, J., concur.